ALI ABUGHEIDA (STATE BAR NO. 285284)
aabugheida@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

Attorney for Defendant
NVIDIA Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY PENNING, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 5:25-CV-09160-SVK<br><br>**NVIDIA CORPORATION'S NOTICE AND MOTION TO COMPEL ARBITRATION**<br><br>Date:       March 24, 2026<br>Time:       10:00 a.m.<br>Courtroom: 6, 4th Floor<br>Judge:      Hon. Susan van Keulen<br><br>Complaint Filed:   October 24, 2025 |

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION

i

CASE NO. 5:25-CV-09160-SVK

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED .................................................... 1

III.  SUMMARY OF RELEVANT FACTS ................................................................. 2

IV.   LEGAL STANDARD .............................................................................................. 6

V.    ARGUMENT ............................................................................................................ 7

    A.   The FAA Governs NVIDIA's Arbitration Agreement. ........................................ 7

    B.   Plaintiff Agreed to Agreement to Arbitrate His Dispute with NVIDIA. ............. 7

    C.   Plaintiff's Claims Against NVIDIA Fall Within the Scope of The Arbitration Agreement. 11

    D.   If The Court Does Not Grant NVIDIA's Motion, it Should Allow NVIDIA to Take Limited Discovery into Plaintiff's and His Attorney's Use of NVIDIA's Website. ................. 11

    E.   The Court Should Stay This Litigation Pending Completion of Arbitration. ................... 12

VI.   CONCLUSION ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahim v. ESIS, Inc.*,
No. C-07-040414 JCS, 2008 WL 220104 (N.D. Cal. Jan. 25, 2008) ...................................... 4

*Allied-Bruce Ter-minix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) .............................................................................................................. 8

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .............................................................................................................. 7

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) .................................................................................................. 8

*Chacon v. Barclays Bank Delaware*,
No. EDCV 24-0583-KK-DTBx, 2024 WL 4800712 (C.D. Cal. Sept. 6, 2024) ...................... 8

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .............................................................................................................. 7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ................................................................................................................ 7

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................................................................ 7, 12

*I.C. by & Through Chaudhri v. Zynga Inc.*,
No. 20-CV-01539-YGR, 2021 WL 51718 (N.D. Cal. Jan. 6, 2021) ...................................... 8

*Jackson v. Amazon.com, Inc.*,
559 F. Supp. 3d 1132 (S.D. Cal. 2021), *aff'd,* 65 F.4th 1093 (9th Cir. 2023) .......................... 8

*Kellison v. First Premier Bank*,
No. CV 17-02318 SJO (KK), 2018 WL 5880614 (C.D. Cal. Mar. 5, 2018) ........................... 12

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022)................................................................................................. 13

*L.B. v. LinkedIn Corp.*,
No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......................... 9, 12

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ................................................................................. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .................................................................................................................. 7

*Newell Rubbermaid Inc. v. Storm*,
　No. 9398-VCN, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014) ................................................. 8

*Silicon Valley Self Direct, LLC v. Paychex, Inc.*,
　No. 5:15-CV-01055-EJD, 2015 WL 4452373 (N.D. Cal. Jul. 20, 2015) .............................. 12

*Smith v. Spizzirri*,
　601 U.S. 472 (2024) .................................................................................................. 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
　No. M 07-1827 SI, C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. Jul. 6, 2011) ..................... 7

**Statutes**

9 U.S.C. § 2 ............................................................................................................... 7, 8

9 U.S.C. § 3 ......................................................................................................... 7, 13, 14

9 U.S.C. § 4 ......................................................................................................... 1, 7, 8

Cal. Penal Code § 631 ...................................................................................................... 2

Cal. Penal Code § 638.51 .................................................................................................. 2

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 24, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 4th Floor, of the U.S. District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant NVIDIA Corporation ("NVIDIA") will and hereby does move pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Plaintiff to submit this case to arbitration on an individual basis and staying this case.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of William Lee, Request for Judicial Notice, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

Dated: January 16, 2026

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Ali Abugheida*

ALI ABUGHEIDA (SBN 285284)
aabugheida@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:        +1 415 773 5700
Facsimile:        +1 415 773 5759

*Attorney for Defendant*
*NVIDIA Corporation*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This dispute belongs in arbitration.  Plaintiff Stacy Penning claims he visited www.nvidia.com (the "Website"), was prompted by a popup cookie consent banner to "Manage Cookies," selected the option to "Decline All" non-essential cookies, but notwithstanding his selection, NVIDIA Corporation ("NVIDIA") used cookies and other "tracking technologies" to collect and transmit his data to third parties. [1]

NVIDIA's persistent cookie banner—the banner that Plaintiff claims to have clicked through—states: "by clicking one of the buttons below, you agree to … and accept our Terms of Service (which contains important waivers)." Those Terms of Service, in turn, contain an arbitration provision requiring that "any dispute, claim or controversy arising out of or relating to the Site or these Terms…be resolved by arbitration[.]" As a result, when Plaintiff clicked through NVIDIA's cookie banner, he agreed to arbitrate the claims set forth in his Complaint.

Plaintiff's Complaint attempts to avoid this inevitable outcome by obfuscating *when* he interacted with the Website. He does not state the dates he claims to have visited the Website or reference the cookie banner he was presented with at the time of his visit.  Instead, Plaintiff quotes from and cites to an outdated version of NVIDIA's cookie banner that did not reference the Website's Terms of Service. However, the screenshots Plaintiff includes in his Complaint establish that Plaintiff visited the Website on or after February 27, 2025, and since that date, NVIDIA's cookie banner has required an agreement to the Website's Terms of Service, which have included an arbitration agreement.

Plaintiff agreed to arbitrate his dispute with NVIDIA. Accordingly, the Court should grant this motion and compel Plaintiff to arbitration.

### II.    STATEMENT OF ISSUES TO BE DECIDED

NVIDIA seeks an order compelling arbitration pursuant to the Federal Arbitration Act, 9

---

[1] Plaintiff's substantive claims have no merit and should be dismissed.  Because Plaintiff refused to agree to stagger the motions, NVIDIA is filing a Motion to Dismiss to preserve its arguments. This Court need not decide NVIDIA's Motion to Dismiss, if NVIDIA's Motion to Compel Arbitration is granted.

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION                                  1                          CASE NO. 5:25-CV-09160-SVK

U.S.C. § 4.

## III.  **SUMMARY OF RELEVANT FACTS**

NVIDIA is a technology company that specializes in designing graphics processing units, AI systems, and software platforms and solutions. Compl. ¶ 22. NVIDIA has a website, www.nvidia.com, where visitors can learn more about NVIDIA's products. *Id.* ¶ 22.

Plaintiff alleges that he is a California resident who visited the Website "on multiple occasions during the last four years." Compl. ¶ 133. He alleges NVIDIA permitted third parties to "to use cookies and other tracking technologies to collect, track, and compile" certain of his interactions with the Website—namely, his "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." Compl. ¶ 157. On this basis, Plaintiff asserts claims for invasion of privacy; intrusion upon seclusion; wiretapping violation under CIPA, Cal. Penal Code § 631; use of a pen register under CIPA, Cal. Penal Code § 638.51; common law fraud, deceit and/or misrepresentation; and unjust enrichment. *Id.* ¶¶ 152-226.

Although Plaintiff's interactions with the Website are at the heart of all his claims, the Complaint omits crucial details. In particular, the Complaint fails to state the dates on which Plaintiff visited the Website. The Complaint does, however, contain images that purport to be screenshots from the Website during Plaintiff's visits. For instance, the Complaint includes the following image, which features a search bar on the Website that Plaintiff claims to have "input … information into":



Compl. ¶¶ 38-39. That image represents a version of the Website that existed on and after February 27, 2025. The search bar depicted was not available to California-based visitors like Plaintiff until that date. Lee Decl. ¶ 5. Accordingly, although the Complaint does not say so directly, based on Plaintiff's own allegations that he used a search bar feature and the inclusion of the image above, Plaintiff visited the Website on or after February 27, 2025. [2]

From December 2025 through July 2025, for visitors based in California, the Website included the following persistent banner that appeared across the bottom of the Website, which moved with the webpage as a user scrolled:

Lee Decl. ¶ 6. [3]

As shown above, that banner stated that "[b]y clicking 'Agree' or 'Manage Settings,' you consent to the use of cookies and other tools as described in our Cookie Policy in accordance with your settings and accept our Terms of Service (which contains important waivers)." *Id.* The

---

[2] In a service copy of the complaint, Plaintiff alleged that he visited the Website "in or around July 18, 2025." Declaration of Ali Abugheida, Ex. A ¶ 133. That date is consistent with the version of the Website that appears in the images in the Complaint.

[3] In reviewing a motion to compel arbitration, courts are not limited to the allegations in the Complaint and may also consider extrinsic facts, including those submitted by declaration. *Abrahim v. ESIS, Inc.*, No. C-07-040414 JCS, 2008 WL 220104, at *2 (N.D. Cal. Jan. 25, 2008).

NVIDIA CORPORATION'S MOTION TO COMPEL ARBITRATION

CASE NO. 5:25-CV-09160-SVK

3

underlined terms "Cookie Policy" and "Terms of Service" are embedded hyperlinks, which, if clicked would have taken a visitor to the Terms of Service or Cookie Policy, respectively. *Id.*

The Website was updated in July 2025. Beginning in July 2025 (and continuing today), visitors based in California are presented with the following persistent banner that appears across the bottom of the webpage, and moves with the webpage as a user scrolled:

Lee Decl. ¶ 10.

As shown above, that banner states that "[b]y continuing to use this site or by clicking on one of the buttons below, you agree to the use of cookies and other tools described in our Privacy Policy and Cookie Policy (subject to your settings) and accept our Terms of Service (which contains important waivers)." *Id.* As with the prior banner, the underlined terms "Privacy Policy," "Cookie Policy," and "Terms of Service" are embedded hyperlinks that, if clicked, will take a visitor to the applicable policy.

Because Plaintiff visited the Website on or after February 27, 2025, he necessarily saw one or both of the above cookie banners. The versions of the cookie banner depicted above are the *only* ones that a California-based visitor to the Website would have encountered on or after February 27, 2025. Lee Decl. ¶¶ 6, 10, 14. However, the Complaint depicts and describes only an older, *outdated* version of the cookie banner:

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION

4

CASE NO. 5:25-CV-09160-SVK

Compl. ¶ 27. This version of the banner is more than a year old and *was not available* on the Website at the same time as the search bar image depicted at Compl. ¶¶ 38-39, and hence at the time of Plaintiff's visit. Lee Decl. ¶¶ 12-13. Accordingly, when Plaintiff visited the Website and saw the search bar image referenced in his Complaint, he could not have seen or interacted with the version of the cookie banner depicted in the Complaint. Lee Decl. ¶ 14. Instead, Plaintiff must have seen at least one of the two banners depicted above that existed in February and July 2025, respectively. *Id.*

Plaintiff claims that he followed his "typical practice" of managing and declining cookies during his visits to the Website, Compl. ¶ 137.  He therefore admits that he clicked either the "Manage Settings" button (in the version of the cookie banner that existed on or after February 27, 2025) or the "Turn Off Optional Cookies" button (in the most recent version of the cookie banner). And per the text of the cookie banners, by taking each of those actions Plaintiff "accept[ed] [the] Terms of Service." Lee Decl. ¶¶ 7, 11.

The Terms of Service, in turn, state (and have stated from February 5, 2025 through the present) that any disputes arising out of Plaintiff's interactions with the Website must be brought in individual, binding arbitration. Lee Decl. Ex. A. Indeed, the Terms of Service state explicitly (and in all caps) in the very first section:

> THESE TERMS CONTAIN A MANDATORY INDIVIDUAL ARBITRATION AGREEMENT AND CLASS ACTION/JURY TRIAL WAIVER PROVISION THAT REQUIRE, WITH ONLY SPECIFIED EXCEPTIONS SET FORTH HEREIN OR UNLESS YOU OPT OUT PURSUANT TO THE INSTRUCTIONS HEREIN, THE EXCLUSIVE USE OF FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS, COLLECTIVE, PRIVATE ATTORNEY GENERAL OR REPRESENTATIVE ACTIONS OR PROCEEDINGS.

*Id.* The Terms of Service then go on—in a separately delineated section entitled "Binding Arbitration"—to elaborate that arbitration agreement in detail, explaining:

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION

CASE NO. 5:25-CV-09160-SVK

5

You and NVIDIA agree all Disputes [which the Terms of Service define to mean "any dispute, claim, or controversy arising out of or relating to the Site of these Terms"] will be resolved by arbitration administered by the office of Judicial Arbitration and Mediation Services ("JAMS") under its Comprehensive Arbitration Rules and Procedures then in effect for JAMS...

*Id.* The Terms of Service also state explicitly that "any dispute, claim or controversy" arising out of or relating to the Website includes any disagreement about "whether the claims asserted are arbitrable":

The dispute (including whether the claims asserted are arbitrable) will be referred to and finally determined by arbitration…

*Id.* Because Plaintiff has not submitted this dispute to binding arbitration as required by the Terms of Service, NVIDIA brings this motion to compel arbitration.

## IV.    LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, C 09-05609 SI, 2011 WL 2650689, at *1 (N.D. Cal. Jul. 6, 2011). If a court compels arbitration in a dispute filed in federal court, the FAA requires that the litigation be stayed to allow arbitration to take place. 9 U.S.C. § 3.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That language requires courts to "rigorously enforce arbitration agreements," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotations omitted), and reflects a "general policy favoring arbitration agreements," which creates a "strong presumption in favor of arbitration." *TFT-LCD*, 2011 WL 2650689, at *2. Thus, in deciding a motion to compel arbitration, a court must limit its review to two issues: (1) "whether a valid arbitration agreement exists"; and (2) "whether the[] agreement covers a particular controversy." *Henry Schein, Inc. v.*

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION                          6                          CASE NO. 5:25-CV-09160-SVK

*Archer and White Sales, Inc.*, 586 U.S. 63, 68-69 (2019). However, if the arbitration agreement exists, and includes a delegation provision, the court does not reach the second issue. *Id.*

In answering those questions, courts apply state-law principles that govern the formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Additionally, the FAA permits discovery "in connection with a motion to compel arbitration," if "'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *I.C. by & Through Chaudhri v. Zynga Inc.*, No. 20-CV-01539-YGR, 2021 WL 51718, at *1 (N.D. Cal. Jan. 6, 2021) (quoting 9 U.S.C. § 4).

## V.   ARGUMENT

### A.   The FAA Governs NVIDIA's Arbitration Agreement.

The FAA governs this dispute because the Terms of Service expressly provide that the arbitration agreement is governed by the FAA, Lee Decl. Ex. A. Additionally, the agreement falls within the FAA's terms, which applies to any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. As NVIDIA is a nationwide company and the Terms of Service govern transactions occurring through the Website, the FAA applies. Lee Decl. Ex. A ("The parties acknowledge that these Terms evidence a transaction involving interstate commerce."); *see also Allied-Bruce Ter-minix Cos., Inc. v. Dobson*, 513 U.S. 265, 277-82 (1995) (FAA governs agreements to arbitrate that involve national companies due to necessary involvement of interstate commerce). And no exception applies.

### B.   Plaintiff Agreed to Agreement to Arbitrate His Dispute with NVIDIA.

A valid and binding contract exists "if it manifests mutual assent by the parties"—i.e., if the parties had "reasonable notice, either actual or constructive, of the terms of the putative agreement," and "manifest[ed] assent to those terms." *Newell Rubbermaid Inc. v. Storm*, No. 9398-VCN, 2014

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION

7

CASE NO. 5:25-CV-09160-SVK

WL 1266827, at *6 (Del. Ch. Mar. 27, 2014).[4] In the context of contracts created by a consumer's interactions with a website, the inquiry focuses on whether a "manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons," which in turn depends on whether the "website puts the consumer on constructive notice of the contractual terms." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 944 (2022).

As courts have explained, one way of creating such a binding contract is to alert the website visitor with a persistent banner that their continued use of the website constitutes agreement of the relevant terms. *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *9 (N.D. Cal. Oct. 10, 2025). Where a persistent banner "clearly informs users in plain language that continued use of the website constitutes acceptance" of certain terms, which are hyperlinked via "underlined" text that "capitalized the first letter of each word," it provides "sufficient notice" of those terms to render them binding. *Id.* at *10. Additionally, the "plain language" disclosing that continued use of the website constitute[s] agreement," leaves no ambiguity about whether the visitor meant to assent, as any "reasonable[] prudent user would … understand" that if they did not wish to be bound by the terms, they should discontinue their use of the website immediately. *Id.* at *10; *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (holding that continued use of website after appearance of cookie banner constituted consent).

Here, when Plaintiff visited the Website, he was presented with a persistent banner—which would not disappear without engagement—stating that he "accept[s] our Terms of Service" by either "[b]y clicking 'Agree' or 'Manage Settings,'" Lee Decl. ¶ 6 (per the version of the cookie banner deployed from December 2024 to July 2025), or "[b]y continuing to use this site or by clicking one of the buttons below," *id*. ¶ 10 (per the version deployed from July 2025 through present). Plaintiff was thus notified (by either version of the banner) that by clicking any button on the banner, he would necessarily manifest assent to be bound by the Terms of Service. Plaintiff

_____

[4] The Terms of Service specify that Delaware law shall apply to "[a]ll matters relating to the Site or these Terms and any Disputes" arising under or related thereto. Lee Decl. Ex. A. That said, "[t]he laws of contract formation of ... Delaware, and California law are materially the same[.]" *Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1138 (S.D. Cal. 2021), aff'd, 65 F.4th 1093 (9th Cir. 2023); *see also, e.g.*, *Chacon v. Barclays Bank Delaware*, No. EDCV 24-0583-KK-DTBx, 2024 WL 4800712, at *3, n.2 (C.D. Cal. Sept. 6, 2024). As a result, the choice-of-law question is of lesser importance here, and cases applying Delaware and California law can both be instructive.

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION

CASE NO. 5:25-CV-09160-SVK

8

admits that he did exactly that. Compl. ¶ 136. Plaintiff's admission that he saw and interacted with the banner establishes that he was on actual notice of the Terms of Service and, in turn, the arbitration agreement. Actual notice is more than sufficient to establish consent to an agreement. *L.B.*, 2025 WL 2899514, at *8 (actual notice is sufficient to establish consent). Accordingly, he agreed to be bound by the Terms of Service, including the arbitration provision.

Perhaps recognizing this problem, Plaintiff tries to obfuscate the above facts by including an older, outdated version of the cookie banner in his Complaint, which does not include a link to the Terms of Service:

Compl. ¶ 27. But that version of the cookie banner *was not the one* that Plaintiff would have seen during his visit. The version of the cookie banner depicted in Plaintiff's Complaint has not been available since prior to December 2024. Lee Decl. ¶¶ 6, 13. And Plaintiff's Complaint establishes that Plaintiff visited the Website on or after February 27, 2025. Specifically, Plaintiff claims that when he visited the Website, he interacted with a search bar and includes an image of that search bar in the Complaint. Compl. ¶ 38. That version of the search bar was not available to California-based visitors before February 27, 2025. Accordingly, when Plaintiff visited the Website and saw the search bar image referenced at Compl. ¶¶ 38-39, he could not have seen or interacted with the version of the cookie bar depicted in the Complaint. Lee Decl. ¶ 14. Instead, Plaintiff must have seen and interacted with at least one of the two persistent and robust banners the Website has

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION

9

CASE NO. 5:25-CV-09160-SVK

presented to its visitors since December 2024:

**December 2024 Banner**



**July 2025 Banner**

That conclusion is also consistent with Plaintiff's own representation in a service copy of the complaint, in which he alleged (in language that Plaintiff's conspicuously struck from the Complaint) that Plaintiff visited the Website "in or around July 18, 2025." Declaration of Ali Abugheida, Ex. A ¶ 133.

Because Plaintiff visited the Website on or after February 27, 2025, and as a result, interacted with a banner plainly informing him that by clicking on any of its buttons (which he admits he did), he agreed to the Website's Terms of Service. Plaintiff is thus bound by the Website's Terms of Service. *L.B.*, 2025 WL 2899514, at *10.

**C.      Plaintiff's Claims Against NVIDIA Fall Within the Scope of The Arbitration Agreement.**

Because the Arbitration Agreement contains a delegation clause, the Court's analysis ends here. *Henry Schein*, 586 U.S. at 68-69 (holding that if the court determines that an arbitration agreement was formed and it includes a delegation provision, the arbitrator decides "whether their agreement covers a particular controversy"). But even if the Court were to consider the issue, there can be no serious dispute that the arbitration provision here covers Plaintiff's claims against NVIDIA. As noted above, when Plaintiff assented to the Terms of Service he agreed that "any dispute, claim or controversy arising out of or relating to the Site or these Terms" will "be resolved by arbitration administered by the office of Judicial Arbitration and Mediation Services ("JAMS") under its Comprehensive Arbitration Rules and Procedures." Lee Decl. Ex. A. That kind of "facially broad" language has been held "to apply to all aspects of the signatories' … relationship." *Silicon Valley Self Direct, LLC v. Paychex, Inc.*, No. 5:15-CV-01055-EJD, 2015 WL 4452373, at *5 (N.D. Cal. Jul. 20, 2015); *Kellison v. First Premier Bank*, No. CV 17-02318 SJO (KK), 2018 WL 5880614, at *3 (C.D. Cal. Mar. 5, 2018) ("When courts in [the Ninth] Circuit are confronted with an arbitration clause containing such broad language, 'all doubts are to be resolved in favor of arbitrability.'"). And it certainly covers Plaintiff's claims here, which arise directly out of his use of the Website.

**D.      If The Court Does Not Grant NVIDIA's Motion, it Should Allow NVIDIA to Take Limited Discovery into Plaintiff's and His Attorney's Use of NVIDIA's Website.**

For the reasons stated above, Plaintiff visited the Website on or after February 27, 2025. If contrary to the allegations in the Complaint, Plaintiff denies that he visited the Website on or February 27, 2025, the Court should allow NVIDIA to take discovery on all the dates Plaintiff and his counsel visited the Website.

NVIDIA CORPORATION'S MOTION
TO COMPEL ARBITRATION                    11                    CASE NO. 5:25-CV-09160-SVK

The Court should permit NVIDIA to take discovery on all the dates Plaintiff visited the Website, as that question directly bears on which version of the cookie banner Plaintiff interacted with, and in turn whether those interactions formed a binding agreement to arbitrate. *Supra* § V.A.

The Court should also permit NVIDIA to take discovery on all the dates Plaintiff's counsel visited the Website to perform the "investigation" upon which Plaintiff's lawsuit is based (Compl. at 1), as well as whether and to what extent Plaintiff's counsel was acting as Plaintiff's agent in doing so (including whether and to what extent Plaintiff ratified any such actions). The Complaint includes images from the Website which could only have been obtained after February 27, 2025. *Supra* § II. And if Plaintiff denies having visited the Website after that date, then it follows that Plaintiff's counsel must have done so on his behalf; indeed, his Complaint says as much directly, explaining that Plaintiff's allegations are based either upon "Plaintiff's personal knowledge" or "investigation of Plaintiff's counsel." Compl. at 1. The Ninth Circuit has recognized that where a party's counsel enters into an arbitration agreement (as Plaintiff's counsel would have done here, by interacting with the cookie banner or Website) when acting as the party's agent, counsel's actions bind their client as well. *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832-35 (9th Cir. 2022). Interacting with the Website's cookie banner will be binding either if the counsel-as-agent acted with authority (either actual or apparent) at the time, or if the party ratified their counsel's action after the fact. *Id.*

Accordingly, if Plaintiff denies that he visited the Website after February 27, 2025, NVIDIA is entitled to discovery as to both Plaintiff's and his counsel's visits to the Website, as well as to the agency relationship between them (including any ratification of counsel's acts).

**E.      The Court Should Stay This Litigation Pending Completion of Arbitration.**

Section 3 of the FAA provides that when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Here, the action is subject to arbitration and NVIDIA requests a stay. Accordingly, the Court should grant NVIDIA's request. *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024) ("When a district court finds that a lawsuit involves an

arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

## VI.   CONCLUSION

For the foregoing reasons, this Court should compel Plaintiff to submit his claims to binding, individual arbitration and stay this action pending resolution of his claims in arbitration. If Plaintiff denies that he visited the Website on or after February 27, 2025, it should permit NVIDIA to take discovery necessary to show the formation of an agreement to arbitrate.

Dated: January 16, 2026

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Ali Abugheida*

ALI ABUGHEIDA (SBN 285284)
aabugheida@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  +1 415 773 5700
Facsimile:   +1 415 773 5759

*Attorney for Defendant NVIDIA Corporation*