ALI ABUGHEIDA (STATE BAR NO. 285284)
aabugheida@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorney for Defendant
NVIDIA Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY PENNING, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 5:25-CV-09160-SVK<br><br>**NVIDIA CORPORATION'S NOTICE AND MOTION TO DISMISS**<br><br>Date:        March 24, 2026<br>Time:        10:00 a.m.<br>Courtroom: 6, 4th Floor<br>Judge:       Hon. Susan van Keulen<br><br>Complaint Filed:   October 24, 2025 |

NVIDIA CORPORATION'S
MOTION TO DISMISS

CASE NO. 5:25-CV-09160-SVK

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT.................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ......................................................... 2

          1.     The Complaint does not sufficiently plead injury-in-fact and fails to establish Article III standing. ........................................................................ 2

          2.     The Complaint does not sufficiently state claims for (1) invasion of privacy, (2) intrusion upon seclusion, (3) wiretapping in violation of Cal. Penal Code § 631, (4) use of a pen register in violation of Cal. Penal Code § 638.51, (5) common-law fraud, deceit, and misrepresentation, and (6) unjust enrichment. ........................................... 2

III.   BACKGROUND ....................................................................................................... 2

     A.     Plaintiff's Alleged Interactions With NVIDIA's Website .................................... 2

     B.     Plaintiff's Counsel's Business Model Is To Threaten Dozens Of Companies With The Same Meritless Cookie Claims ........................................... 3

IV.    ARGUMENT ............................................................................................................ 5

     A.     Plaintiff Lacks Article III Standing.......................................................................... 5

          1.     Plaintiff Fails To Allege A Legally Cognizable Injury In Fact. ................. 5

          2.     Plaintiff Fails To Allege That His Injuries Are Fairly Traceable To The Acts Of NVIDIA That He Challenges Here. ....................................... 8

     B.     Plaintiff's Complaint Must Be Dismissed For Failure To Plead Facts With Particularity As Rule 9(b) Requires. ................................................................ 8

          1.     Rule 9(b) Applies To Plaintiff's Entire Complaint. ................................... 8

          2.     Plaintiff's Complaint Fails To Meet Rule 9(b)'s Standard. ...................... 10

     C.     Plaintiff's Complaint Fails Under Rule 12(b)(6) ................................................... 11

          1.     Plaintiff's Privacy Claim Fails To Allege "Highly Offensive" Conduct Or A Reasonable Expectation of Privacy (Counts 1 and 2) ....... 12

          2.     Plaintiff's Wiretapping Claim Fails To Allege Interception Of "Contents" Or That NVIDIA Aided And Abetted Any Illegal Activity (Count 3) ..................................................................................... 13

          3.     Plaintiff's Pen Register Claim Fails To Allege Either An Unlawful Pen Register Or Lack Of Consent (Count 4). ........................................... 15

          4.     Plaintiff's Common-Law Fraud, Deceit, And Misrepresentation Claim Fails To Allege Damages, Intent, Or Knowledge Of Falsity (Count 5). ................................................................................................... 18

          5.     Plaintiff's Unjust Enrichment Claim Is Duplicative Of Plaintiff's Tort And Statutory Claims (Count 6). ...................................................... 20

V.     CONCLUSION ....................................................................................................... 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................................ 20

*Ash v. Bank of Am. N.A.*,
No. 2:10-CV-02821-KJM-KJN, 2014 WL 301027 (E.D. Cal. Jan. 28, 2014) ...................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 11

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................................................................... 20

*Bates v. United Parcel Serv. Inc.*,
511 F.3d 974 (9th Cir. 2007) (en banc) ............................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 11

*Brodsky v. Apple Inc.*,
No. 19-cv-00712, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .......................................... 20

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ................................................................ 4

*Calcano v. Swarovski N. Am. Ltd.*,
36 F.4th 68 (2d Cir. 2022) ........................................................................... 4

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. 06-1497, 2009 WL 1664468 (D. Minn. Jul. 11, 2009) ............................................... 16

*Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*,
130 F.4th 757 (9th Cir. 2025) ........................................................................ 8

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ........................................................................ 11

*de Ayora v. Inspire Brands, Inc.*,
No. 25-CV-03645-AGT, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .................................. 10, 11

*Doe v. Eating Recovery Ctr., LLC*,
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ...................................... 14

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................................... 21

*Duran v. Creek*,
No. 3:15-CV-05497-LB, 2016 WL 1191685 (N.D. Cal. Mar. 28, 2016) ................................ 9

*Esparza v. UAG Escondido A1 Inc.*,
No. 23CV0102 DMS (KSC), 2024 WL 559241 (S.D. Cal. Feb. 12, 2024)........................... 15

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .................................................................................. 7

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011)............................................................................................... 13

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. Jul. 1, 2021)....................................................................... 19

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................................... 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................................. 13

*Guzman v. Walmart Inc.*,
No. 22-CV-3465, 2023 WL 4535903 (N.D. Ill. May 15, 2023) ............................................. 4

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................... 12

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................................................................... 12, 17, 18

*Heiting v. FKA Distib. Co.*,
No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025)........................ 5

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) ............................................................................... 18

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ......................................................................................................... 12

*Hodes v. Van's Int'l Foods*,
No. CV 09-01530 RGK, 2009 WL 10674101 (C.D. Cal. June 23, 2009) ............................. 19

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................. 19

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................................. 6

*In re Innovatio IP Ventures, LLC Patent Litig.*,
886 F. Supp. 2d 888 (N.D. Ill. 2012) ................................................................................... 16

NVIDIA CORPORATION'S
MOTION TO DISMISS

CASE NO. 5:25-CV-09160-SVK

iii

*Johnson v. 27th Ave. Caraf, Inc.*,
 9 F.4th 1300 (11th Cir. 2021)......................................................................................... 4

*Katz-Lacabe v. Oracle Am., Inc.*,
 668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................................................ 14

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009)..................................................................................... 8, 9

*Latu v. Long Beach Mortgage Co.*,
 No. C 09-00438 CW, 2009 WL 2912516 (N.D. Cal. Sept. 9, 2009) ............................... 10, 11

*Malibu Media, LLC v. Pontello*,
 No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013)......................................... 18

*Mikulsky v. Bloomingdale's, LLC*,
 713 F. Supp. 3d 833 (S.D. Cal. 2024) ......................................................................... 14

*Mitchener v. CuriosityStream, Inc.*,
 No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ..................................... 6

*Moose Run, LLC v. Libric*,
 No. 19-cv-01879-MMC, 2020 WL 3316097 (N.D. Cal. June 18, 2020)............................... 20

*Navarro v. Block*,
 250 F.3d 729 (9th Cir. 2001)....................................................................................... 11

*Neubronner v. Milken*,
 6 F.3d 666 (9th Cir. 1993).......................................................................................... 11

*Pena v. GameStop, Inc.*,
 670 F. Supp. 3d 1112 (S.D. Cal. 2023) ....................................................................... 16

*Popa v. Microsoft Corp.*,
 153 F.4th 784 (9th Cir. 2024)..................................................................................... 5, 6

*Price v. Converse, Inc.*,
 No. 2:24-CV-08091-FLA (Ex), 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) ...................... 7

*Robichaud v. Speedy PC Software*,
 No. C 12 04730 LB, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013) ................................. 8, 9, 10

*Rodriguez v. Culligan Int'l Co.*,
 No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........................ 6, 7

*Rodriguez v. Plivo, Inc.*,
 No. 24STCV08972 (Cal. Super. Ct.) .......................................................................... 15, 17

*Saeedy, et al. v. Microsoft Corp.*,
 No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023)....................................... 7

NVIDIA CORPORATION'S
MOTION TO DISMISS

iv

CASE No. 5:25-CV-09160-SVK

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. Jul. 28, 2021) ........................ 17, 20

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ............................................................... 14, 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................ 5

*Torres v. Nutrisystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013) ...................................................................... 17

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......................................................... 3, 6, 12, 17, 18

*Vess v. Ciba-Geiby Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ................................................................. 9, 10, 11

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................... 14

*Walsh v. Dollar Tree Stores, Inc.*,
No. 5:25-cv-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ................................ 13

*Winsor v. Sequoia Benefits & Ins. Servs.*,
LLC, 62 F.4th 517 (9th Cir. 2023) .................................................................... 5

*Wishnick v. Frye*,
111 Cal. App. 2d 926 (1952) ........................................................................... 19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................... 12

*In re Zoom Video Communs. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ................................................................ 18

*In re Zynga Priv. Litig.*,
750 F.3d at 1108 .................................................................................... 12, 13

**Statutes**

Cal. Civ. Code § 1710 ................................................................................ 19

Cal. Penal Code § 630 ................................................................................. 3

Cal. Penal Code § 631 ..................................................................... 2, 13, 14, 15

Cal. Penal Code § 638.50 ............................................................................. 18

Cal. Penal Code § 638.51 ................................................................. 2, 15, 16, 17

Cal. Penal Code § 638.52 ................................................................................................. 17

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................. 20

Fed. R. Civ. P. 9(b) ...................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 11

**Other Authorities**

California Bill Analysis, 2015 California Assembly Bill No. 929 (Apr. 7, 2015) ........................ 16

## NOTICE OF MOTION

**Please take notice** that on March 24, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 4th Floor, of the U.S. District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant NVIDIA Corporation ("NVIDIA") will move the Court to dismiss the Complaint under Rule 12(b)(1) and Rule 12(b)(6). Under Rule 12(b)(1), Plaintiff lacks Article III standing because he pleads no concrete, particularized injury stemming from routine web telemetry and cookie activity; under Rule 12(b)(6), each claim fails as a matter of law.

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the Request for Judicial Notice, the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated: January 16, 2026

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Ali Abugheida*

ALI ABUGHEIDA (SBN 285284)
aabugheida@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:        +1 415 773 5700
Facsimile:        +1 415 773 5759

*Attorney for Defendant*
*NVIDIA Corporation*

NVIDIA CORPORATION'S
MOTION TO DISMISS

CASE No. 5:25-CV-09160-SVK

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Plaintiff Stacy Penning brings a slew of privacy and fraud claims against NVIDIA, alleging his cookie opt-outs were not effective when his visited www.nvidia.com (the "Website"), allowing third parties to access information about his activities on the Website—namely, searching for NVIDIA "news," reading NVIDIA's "Corporate Blog," and browsing through AI-related products for sale. Compl. ¶ 135.

As set forth in NVIDIA's Motion to Compel Arbitration, this Court is not the proper forum to address the merit of Plaintiff's claims.[1] But should the Court reach the merits of Plaintiff's claims, Plaintiff's lawsuit fails for multiple reasons.

First, the Complaint fails to allege a legally cognizable harm to confer Article III standing. Courts have repeatedly held that there is no reasonable expectation of privacy in being associated with the mundane Internet acts Plaintiff alleges were shared with third parties.

Second, all asserted claims are based on a theory of fraud, but the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard. Plaintiff does not provide any of the factual specifics Rule 9(b) demands for claims based on fraud. Plaintiff fails to specify when he was exposed to the purportedly fraudulent representations from NVIDIA, and his vague and contradictory allegations make it impossible to know the content of the allegedly false statement he claims he saw. Thus, Plaintiff's entire complaint must be dismissed.

Third, Plaintiff fails to allege facts leading to plausible claims under Rule 12(b)(6). Plaintiff's invasion of privacy and intrusion upon seclusion claims fail because Plaintiff identifies no reasonable expectation of privacy in the information he alleges was shared with third parties, or that NVIDIA's actions were intentional or "highly offensive." Plaintiff's claim that NVIDIA aided and abetted wiretapping fares no better. This claim requires Plaintiff to allege NVIDIA shared the

---

[1] Concurrently with the filing of this Motion to Dismiss, NVIDIA filed a Motion to Compel Arbitration. NVIDIA is filing this Motion to Dismiss because Plaintiff refused to agree to stagger the briefing of these two issues. The Court should not need to rule on this Motion to Dismiss if Plaintiff is compelled to bring his claim in arbitration. For avoidance of doubt, NVIDIA expressly reserves its right to arbitrate its dispute with Plaintiff and files this briefing without waiving any of its rights under the parties' arbitration agreement.

MOTION TO DISMISS                                          CASE NO. 5:25-CV-09160-SVK

"contents" of his communication, and courts have routinely found that the type of information Plaintiff alleges were shared are not "contents" for the purposes of liability under the California Invasion of Privacy Act ("CIPA"). Similarly meritless is Plaintiff's claim that NVIDIA installed an illegal "pen register" by employing software that collects visitors' IP addresses. Courts have explained that such software does not qualify as a pen register. Plaintiff's claim for fraud, deceit, and misrepresentation cannot survive the pleadings stage because it fails to adequately plead the requisite knowledge, intent, and damages. Finally, Plaintiff's claim for unjust enrichment fails because it is wholly duplicative of Plaintiff's other tort and statutory claims.

Because none of the fatal defects that plague Plaintiff's Complaint can be cured, his claims should be dismissed with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED

NVIDIA seeks an order stating:

**1.**    The Complaint does not sufficiently plead injury-in-fact and fails to establish Article III standing.

**2.**    The Complaint does not sufficiently state claims for (1) invasion of privacy, (2) intrusion upon seclusion, (3) wiretapping in violation of Cal. Penal Code § 631, (4) use of a pen register in violation of Cal. Penal Code § 638.51, (5) common-law fraud, deceit, and misrepresentation, and (6) unjust enrichment.

## III.    BACKGROUND

### A.    Plaintiff's Alleged Interactions With NVIDIA's Website

NVIDIA is a technology company that specializes in designing graphics processing units, AI systems, and software platform solutions. Compl. ¶ 22. NVIDIA runs a website, www.nvidia.com (the "Website"), which visitors can use to learn more about NVIDIA's products. *Id.* ¶ 133. Like many websites—including this Court's website—NVIDIA's Website uses analytics technologies to understand how visitors interact with the Website. These technologies may collect information including the URLs that visitors click on, the URLs of the pages from which they came to the Website, certain properties of visitors' devices and browsers, and visitors' IP address. *Id.*

NVIDIA CORPORATION'S
MOTION TO DISMISS                    2                    CASE NO. 5:25-CV-09160-SVK

¶ 20.[2] The data is automatically generated pieces of information that are shared freely every time a user visits a website, as a technological necessity of facilitating that interaction. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). The analytics technologies sometimes collect cookie information as well, which can allow the provider of the technology to correlate the activities of a website visitor with a particular account (e.g., a Facebook account). Compl. ¶ 21.

Plaintiff alleges the Website contains a persistent consent banner that is immediately displayed when a visitor navigates to the Website. *Id.* ¶ 1. According to the Complaint, this banner informs visitors that the Website contains cookies and provides a button to "Manage Cookies," where users may toggle categories (Required, Performance, Advertising) or may click "Decline All." *Id.* ¶¶ 1-2.[3]

Plaintiff alleges that he resides in California, and that he visited the Website "on multiple occasions during the last four years." *Id.* ¶ 133. Plaintiff claims, specifically, that he used the Website to search for NVIDIA "news," to read NVIDIA's "Corporate Blog," and to "browse[] through some of the AI-related products available for sale on the Website." *Id.* ¶ 135. Plaintiff says that before he did so, he encountered the persistent consent banner, clicked "Manage Cookies," then "Decline All," and later browsed the Website's product pages. *Id.* ¶¶ 135–139. Plaintiff alleges, despite his selection, non-essential cookies continued to function. *Id.* ¶ 140. He alleges that as a result, Plaintiff's "private" communications were intercepted and disclosed to third-party cookie providers. *Id.* ¶ 141. On that basis, Plaintiff claims that NVIDIA invaded his privacy, violated various provisions of the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 630 *et seq.*, and engaged in fraud.

B.      **Plaintiff's Counsel's Business Model Is To Threaten Dozens Of Companies With The Same Meritless Cookie Claims**

Plaintiff's counsel has pursued similar claims in this district against dozens of other retailers

_____

[2] While the Complaint characterizes this data collectively as "Private Communications," (Compl. ¶ 20), that is merely a made-for-litigation label.

[3] As set forth in NVIDIA's Motion to Compel Arbitration, the version of the banner referenced in the Complaint is no longer available on NVIDIA's website. For purposes of this Motion only, NVIDIA accepts the truth of Plaintiff's factual allegations.

NVIDIA CORPORATION'S
MOTION TO DISMISS                                    3                     CASE NO. 5:25-CV-09160-SVK

and companies. Counsel for Defendant has identified over a dozen cases in this district pursued by Plaintiff's counsel since December 2024.[4] The underlying factual allegations are substantially similar and not tailored to any particular defendant. Each complaint asserts claims relating to invasion of privacy, violations of CIPA, and fraud, and some add on breach of contract claims and/or unjust enrichment. Plaintiff's counsel's strategy is thus a numbers game: "[T]he goal" of his enterprise is not to "[i]nitiat[e] legitimate litigation," but rather "to file as many lawsuits as possible in the least amount of time," in hopes of obtaining "quick cash settlement[s]." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059-60 (C.D. Cal. 2023) (dismissing complaint and admonishing plaintiff's counsel for filing "'cookie cutter' lawsuits brought under [CIPA] against businesses that operate websites"). This case is simply the latest of Plaintiff's counsel's assembly-line complaints.

The Court can and should consider this broader context, which underscores why these claims are without merit and pursued for an improper purpose. The Second Circuit, for instance, recently affirmed dismissal of a similarly mass-produced complaint on this ground, explaining that it could not "ignore the broader context of Plaintiffs transparent cut-and-paste and fill-in-the-blank pleadings." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 73, 77 (2d Cir. 2022). And the Eleventh Circuit has explained that courts are free to craft a "reasonable response" to "serial plaintiff[s]" in order to "protect their dockets from abuse by frequent filers." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317 (11th Cir. 2021); *see also*, *e.g.*, *Guzman v. Walmart Inc.*, No. 22-CV-3465, 2023 WL 4535903, at *3-4 (N.D. Ill. May 15, 2023) (dismissing putative consumer fraud class action and ordering plaintiff's counsel to file spreadsheet that "must identify every case filed by Plaintiff's counsel since 2020 where the theory of the case is similar to the case at hand").

---

[4] Counsel for a different defendant had "identified no less than 68 identical online solicitations that Plaintiff's counsel has run since January 2024" through April 2025. *Walsh v. Dollar Tree Stores, Inc.*, No. 5:25-cv-01601-SVK, ECF 18 (N.D. Cal. Apr. 29, 2025) (Defs.' counsel's declaration in support of motion to dismiss), Exs. 5-6. Each solicitation misleadingly makes the blanket assertion that visitors of a target business's website "during the last year using a Chrome browser" "may be the victim of privacy violations" and "may be entitled to compensation." *Id.*

NVIDIA CORPORATION'S                                          CASE NO. 5:25-CV-09160-SVK
MOTION TO DISMISS                       4

IV.    **ARGUMENT**

A.    **Plaintiff Lacks Article III Standing.**

A complaint should be dismissed if the Court lacks subject-matter jurisdiction, including Article III standing. *Bates v. United Parcel Serv. Inc*., 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("Standing is a threshold matter central to our subject matter jurisdiction."). To satisfy Article III's standing requirements, Plaintiff must allege facts showing that (i) he suffered a concrete, particularized, and actual or imminent injury, (ii) the injury was likely caused by defendant, and (iii) the injury can be redressed by judicial relief. *Winsor v. Sequoia Benefits & Ins. Servs*., LLC, 62 F.4th 517, 523 (9th Cir. 2023). A statutory right to sue does not "automatically satisfy the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016). Instead, Plaintiff must show that there has been a "concrete and particularized" invasion of a legally protected interest. *Id.* at 340; *Heiting v. FKA Distib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo*, 578 U.S. at 339); *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2024) (affirming dismissal of complaint for lack of Article III standing where alleged harm concerns website and browsing data relating to session replay).

Here, Plaintiff has failed to allege that he suffered a concrete and particularized injury or that his "injuries" were likely caused by NVIDIA.

1.    **Plaintiff Fails To Allege A Legally Cognizable Injury In Fact.**

Plaintiff claims that NVIDIA's alleged failure to honor his cookie preferences caused him to suffer a violation of his (a) "privacy" rights—namely, the "loss of [his] Private Communications to the Third Parties with no consent"—and (b) his "property right"—namely, the ability "to control the dissemination and use of [his] Private Communications" and the associated "loss of value in his … Private Communications." Compl. ¶ 191. Neither of those theories of harm satisfies the requirements of Article III standing.

Plaintiff's claim of a "privacy injury" fails because website users do not have an expectation of privacy in the type of information at issue here—i.e., "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or

NVIDIA CORPORATION'S                                                    CASE No. 5:25-CV-09160-SVK
MOTION TO DISMISS                          5

geolocation data," Compl. ¶ 157. Much of that information (e.g., website interactions, device information, referring URLs, session information, user identifiers) is "designed to be exchanged to facilitate communication"—that is, it exists specifically is to be shared with others—and thus cannot give rise to a reasonable expectation of privacy against either "collection" or "disclosure." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022); *Forrester*, 512 F.3d at 510 (no reasonable expectation of privacy in information "provided to and used by Internet service providers for the specific purpose of directing the routing of information"). Meanwhile, the rest is "metadata" about the website user's visit, which likewise gives rise to no privacy interest. *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *1, *4-*5 (N.D. Cal. Aug. 6, 2025) (allegation that defendant collected "'browser and device data' and 'other identifying information' alongside IP addresses" to then share with TikTok did not implicate a cognizable privacy interest); *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *4-*5 (S.D. Cal. Nov. 3, 2025) (finding lack of standing where website visitors allege privacy interest in browsing data captured by "tracking beacons" and cookies, including "operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature"). Because the information at issue here is shared ubiquitously—indeed, it is often necessary to allow the internet to work, Compl. ¶ 13 (explaining that the visitors' IP address must be shared "so that the Website server to knows where to send the HTTP response")—there can be no reasonable expectation that it will not be collected or shared when a user visits a website.

Nor is there any privacy right against being ***associated with*** the kind of information Plaintiff alleges was shared with third parties. As the Ninth Circuit recently explained in affirming the dismissal of a similar case for lack of Article III standing, "information allegedly collected … reveals nothing more than the products that interested ... [Plaintiff] and thus is not the type of private information" that gives rise to a legally cognizable privacy injury. *Popa*, 153 F.4th at 787. Courts thus routinely dismiss cases just like this one for failure to allege a legally cognizable injury in fact—often with opinions that read directly onto the allegations in this case. In *Rodriguez*, 2025

NVIDIA CORPORATION'S
MOTION TO DISMISS

6

WL 3064113, for instance, the court considered a claim—virtually identical to the one that Plaintiff advances here—that the defendant employed tracking software that collected a website visitor's "IP address, [her computer's] operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature—as well as the connections between them." *Id.* at *3. That theory, however, failed to give rise to the kind of particularized and concrete injury necessary to support Article III standing, because individuals "lack a privacy interest" in any of that information. *Id.* Likewise, in *Price v. Converse, Inc.*, No. 2:24-CV-08091-FLA (Ex), 2025 WL 3295119, (C.D. Cal. Sept. 30, 2025), the court rejected as "insufficient to establish a concrete injury," a theory of privacy violation based on tracking software that allegedly "gather[ed] data including device and browser information, geographic information, and referral tracking, and … used this information to fingerprint the data and deanonymize Plaintiff by matching it 'with existing data … about hundreds of millions of Americans.'" *Id.* at *3. This Court should do the same here.

Plaintiff's claim of a property injury likewise fails, because there is no legally cognizable property right in the information at issue here. While Plaintiff asserts that NVIDIA's actions somehow caused him to suffer a loss in the value of his information, "[w]hen confronted with data privacy claims similar to the ones brought by Plaintiff[], courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information." *In re Facebook Internet Tracking Litig*., 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). Plaintiff does not claim that he "personally lost the opportunity to sell [his] information," nor does he offer any theory by which "the value of [his] information was somehow diminished after it was collected." *Id.* at 931-32. Nor does Plaintiff otherwise explain how he was "prevented from deriving economic benefit from [his] data." *Saeedy, et al. v. Microsoft Corp*., No. 23-CV-1104, 2023 WL 8828852, at *7 (W.D. Wash. Dec. 21, 2023). Plaintiff's claim of a property injury thus fails to establish the necessary concrete and particularized harm as well.

Plaintiff has failed to show that he suffered either a privacy harm or a property harm that would establish a legally cognizable injury in fact, and for this reason alone, his Complaint should

NVIDIA CORPORATION'S
MOTION TO DISMISS                                         7                          CASE No. 5:25-CV-09160-SVK

be dismissed.

### 2.      Plaintiff Fails To Allege That His Injuries Are Fairly Traceable To The Acts Of NVIDIA That He Challenges Here.

Plaintiff's theories of harm separately fail to establish Article III standing because they fail to show the requisite causation between the act challenged here—NVIDIA's alleged failure to honor Plaintiff's cookie preferences, *see, e.g.*, Compl. ¶ 144—and the harms that Plaintiff claims to have suffered. That is, there is a fundamental mismatch between the act that Plaintiff challenges and the harm on which he basis his claim. Plaintiff alleges that he was harmed because his "Private Communications" were shared with the providers of the analytics technologies employed on NVIDIA's Website. Compl. ¶ 191 (complaining of a "loss of value in [Plaintiff's] Communications," a loss of Plaintiff's "right to control the dissemination and use of [his] Private Communications," and a "loss of [Plaintiff's] Private Communications to the Third Parties with no consent"). But the act that he challenges in this lawsuit is NVIDIA's supposed failure to honor his cookie preferences, not sharing "Private Communications" generally. Compl. ¶ 2 (conceding that "most internet websites" are designed "to include resources and programming scripts from third parties that cause those parties to place cookies and other similar tracking technologies on visitors' browsers and devices and/or transmit cookies along with user data"); ¶¶ 20-21; *see also supra* § III.A. Accordingly, Plaintiff has failed to show the requisite causation between the harms on which he basis his suit and the act that he says NVIDIA wrongly undertook. *Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 130 F.4th 757 (9th Cir. 2025). For this independent reason, too, Plaintiff has failed to establish standing, and his Complaint must be dismissed.

### B.      Plaintiff's Complaint Must Be Dismissed For Failure To Plead Facts With Particularity As Rule 9(b) Requires.

### 1.      Rule 9(b) Applies To Plaintiff's Entire Complaint.

When a complaint is "grounded in fraud," Fed. R. Civ. P. 9(b)'s heightened pleading standards apply. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009); *Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *10 (N.D. Cal. Mar. 5, 2013) (applying Rule 9(b) to all claims because the factual allegations were grounded in fraud). This

NVIDIA CORPORATION'S
MOTION TO DISMISS

8

CASE NO. 5:25-CV-09160-SVK

heightened pleading standard requires that the plaintiff plead facts "with particularity." *Robichaud*, 2013 WL 818503, at \*10.

"Even when fraud is not a necessary element of the claim, a plaintiff may still allege that the defendant's conduct was fraudulent." *Id.* at \*9. Thus, when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim…the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geiby Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003).

In this way, Rule 9(b) serves three purposes. First, it provides "defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Duran v. Creek*, No. 3:15-CV-05497-LB, 2016 WL 1191685, at \*3 (N.D. Cal. Mar. 28, 2016) (quoting *Kearns*, 567 F.3d at 1125). Second, it serves to "protect those whose reputation would be harmed as a result of being subject to fraud charges." *Id*. Third, it serves "to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis." *Id*.

Here, Rule 9(b) applies to every asserted claim in Plaintiff's Complaint because they all arise from the same set of alleged facts, sounding in fraud. The entire Complaint arises out of Plaintiff's assertion that NVIDIA's "promises" to give consumers "a choice to browse without being tracked, followed, and targeted by third party data brokers and advertisers" were "outright lies, designed to lull users into a false sense of security." Compl. ¶ 2. These are fraud allegations.

What is more, Plaintiff grounds each of his claims in the "tracking and data sharing" that Plaintiff says NVIDIA "falsely told Website users … that they could avoid." Compl. ¶ 5. For example, Plaintiff ties his invasion of privacy claim to his "reasonabl[e] expect[ation] that [his] … declination of 'All' cookies and tracking technologies would be honored." Compl. ¶ 155. Similarly, he states that his intrusion upon seclusion claim arises out of NVIDIA's "false representations" that when he "declined 'All' cookies and tracking technologies" NVIDIA "would not cause … third-party cookies to be stored on [his] devices." Compl. ¶ 169. His wiretapping and pen register claims likewise rely on those same allegedly false assurances that Plaintiff could "decline[] to allow Third

NVIDIA CORPORATION'S
MOTION TO DISMISS

CASE NO. 5:25-CV-09160-SVK

9

Parties' cookies" as their basis for alleging that NVIDIA acted without consent. Compl. ¶¶ 198, 201. Plaintiff's fraud claim, too, asserts that NVIDIA "fraudulently and deceptively informed Plaintiff … that [he] … could 'Decline All' Cookies." Compl. ¶ 207. And his unjust enrichment claim is also expressly tied to that same allegedly "false statement[.]." Compl. ¶ 218. Because "the same allegations" of fraudulent conduct thus underlie all of Plaintiff's claims, Rule 9(b)'s heightened pleading standard applies to the entire Complaint. *Robichaud*, 2013 WL 818503, at *10.

Indeed, just a few weeks ago a court in this District held in a similar case—brought by Plaintiff's counsel, also alleging that a website operator failed to abide by visitors' cookie preferences—that all claims, including (as here) invasion of privacy, intrusion upon seclusion, illegal wiretapping, illegal use of a pen register, and unjust enrichment, were subject to (and failed) Rule 9(b)'s heightened pleading requirement. *de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025). That same result is warranted here.

### 2. Plaintiff's Complaint Fails To Meet Rule 9(b)'s Standard.

Rule 9(b) requires that "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106. And it prohibits allegations "based on information and belief," unless Plaintiff shows that the matter at issue is "peculiarly within the opposing party's knowledge," and "states the facts upon which the belief is founded." *Latu v. Long Beach Mortgage Co.*, No. C 09-00438 CW, 2009 WL 2912516, at *2 (N.D. Cal. Sept. 9, 2009). Plaintiff fails to meet that burden.

First, Plaintiff fails to allege with particularity when he saw the alleged misrepresentations. To the contrary, the Complaint deliberately obscures when Plaintiff visited the Website and interacted with the cookie banner. Instead, he alleges that he visited the Website "on multiple occasions during the last four years"—conspicuously omitting any mention of dates certain. Compl. ¶ 133. He then compounds that obfuscation, by misleadingly cobbling together screenshots of different website elements taken at different times. *Compare* Compl. ¶ 38, *with* Compl. ¶ 1 (reproducing images of two website elements that did not simultaneously coexist). As in *de Ayora*, the timing of Plaintiff's visits are important because the content of NVIDIA's cookie banner—and hence, the exact language that Plaintiff saw and claims to have been deceived by—have evolved

NVIDIA CORPORATION'S
MOTION TO DISMISS                    10                    CASE NO. 5:25-CV-09160-SVK

over time. 2025 WL 3707561, at \*4. Therefore, Plaintiff's failure to plead with particularity *when* he saw the alleged misrepresentations also has implications for *what* he saw on the Website. Without precision from Plaintiff on those points—both of which Rule 9(b) plainly demands—it is impossible for NVIDIA to craft its defense. For this reason alone, Plaintiff's Complaint should be dismissed for failure to comply with Rule 9(b). *Vess*, 317 F.3d at 1106.

Second, Plaintiff's Complaint is vague about the basis for his factual allegations. Plaintiff states generally in the preamble to his Complaint that his "allegations against [NVIDIA] are based upon information, belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge," Compl. at 1. But NVIDIA is left to guess as to which allegations are based on Plaintiff's personal knowledge, which are based on his counsel's investigations, and which are based on information and belief (not permitted under Rule 9(b)). "[A]llegations of fraud based on information and belief do not satisfy Rule 9(b)" unless Plaintiff can show that the allegations based upon information and belief concern a "matter[] peculiarly within [NVIDIA's] knowledge" and are supported by adequate "facts upon which [his] belief is founded." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Latu*, 2009 WL 2912516, at \*2. Plaintiff has made no such showing here. This pleading-by-generality is the opposite of the particularity demanded by Rule 9(b). For this additional reason, Plaintiff's entire Complaint should be dismissed for failure to comply with Rule 9(b).

### C.    Plaintiff's Complaint Fails Under Rule 12(b)(6).

A complaint must be dismissed under Rule 12(b)(6) where it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a motion under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint must contain "more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Courts are not required to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Each of Plaintiff's claims fails to meet this standard.

NVIDIA CORPORATION'S
MOTION TO DISMISS

11

CASE NO. 5:25-CV-09160-SVK

**1.      Plaintiff's Privacy Claim Fails To Allege "Highly Offensive" Conduct Or A Reasonable Expectation of Privacy (Counts 1 and 2).**

Plaintiff fails to state a claim for his invasion of privacy or intrusion upon seclusion claims. For these claims to survive a motion to dismiss, Plaintiff must allege facts showing an invasion of his "reasonable privacy expectations" that "occur[red] in a manner highly offensive to a reasonable person" or constituted an "egregious breach of social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, 294 (2009); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (explaining that invasion of privacy and intrusion upon seclusion claims are often considered together because their standards overlap). This standard sets a "high bar" meant to exclude *de minimis* intrusions that do "not even . . . require an explanation or justification by the defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014).

Here, Plaintiff alleges that data concerning his interactions with the Website were tracked and shared. Compl. ¶ 157. Courts have repeatedly held that there is no reasonable expectation of privacy in any of this information because they are the type of website visitor information that is routinely collected by websites. *Forrester*, 512 F.3d at 503 (no privacy expectation over IP addresses visited because plaintiffs "should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information"); *In re Zynga Priv. Litig.*, 750 F.3d at 1108 (no reasonable expectation of privacy in the URL of a website the plaintiff had previously visited or in basic identification information); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 (no reasonable expectation of privacy in contents of emails broadly, only in "confidential" portions).

What is more, courts have consistently held that collecting such information is not "highly offensive." *Hammerling*, 615 F. Supp. 3d at 1090-91 (granting dismissal of privacy claims concerning unique search terms, documents viewed, basic identification information); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (dismissing privacy claims concerning users' "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" was

NVIDIA CORPORATION'S
MOTION TO DISMISS

CASE NO. 5:25-CV-09160-SVK

12

not highly offensive); *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("[R]outine commercial behavior" does not rise to "egregious breach of social norms.").

Thus, Plaintiff's privacy claims are not adequately pled.

### 2. Plaintiff's Wiretapping Claim Fails To Allege Interception Of "Contents" Or That NVIDIA Aided And Abetted Any Illegal Activity (Count 3).

Under CIPA Section 631, it is unlawful to (1) "intentionally tap[] … any telegraph or telephone wire, line, cable, or instrument," or (2) "willfully and without the consent of all parties to the communication … reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." Cal. Penal Code § 631(a). It is also unlawful to "aid[], agree[] with, employ[], or conspire[] with any person" to do either of those things. *Id.* Here, Plaintiff claims that NVIDIA "aided, agreed with, employed, permitted, or otherwise caused" the wiretapping of Plaintiff, by configuring its Website to "transmit … cookies alongside [the] Private Communications" to the providers of the analytics technologies it employed. Compl. ¶ 185. That contention fails for at least three reasons.

*First*, Plaintiff fails to allege the "contents" of the communication he alleges was wiretapped. As courts have explained, "contents" in this context means "the substance, purport or meaning of [the] communication," which refers to the "intended message conveyed by the communication" and is distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Here, Plaintiff claims that the information allegedly intercepted consisted of "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." Compl. ¶ 187. As this Court recently explained, however—in dismissing a virtually identical claim—none of those pieces of information constitutes "contents." *Walsh v. Dollar Tree Stores, Inc.*, No. 5:25-cv-01601-SVK, 2025 WL 2939229, at *16 (N.D. Cal. Oct. 16, 2025); *id.* at *13 (explaining that the *Walsh* plaintiff—like Plaintiff here—alleged collection of "browsing history, visit history, website interactions, user input data, demographic information,

NVIDIA CORPORATION'S
MOTION TO DISMISS

13

CASE NO. 5:25-CV-09160-SVK

interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data"). That is because courts have consistently held that information such as "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" are mere "record information" associated with a communication, not the substantive contents of a communication itself. *Id.* at \*16; *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing similar website wiretapping claims because intercepted "interactions" with website not sufficient to allege "contents"); *Katz-Lacabe v. Oracle Am., Inc*., 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (non-actionable "record information" includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions").

*Second*, Plaintiff fails to allege that anyone attempted to read or learn the contents of substantive message contents while they were "in transit." As Judge Chhabria recently explained, Section 631 demands "something more than just [the] intercept[ion] [of a] communication while it is in transit"; instead, it requires that a third-party interloper actually "read, attempt to read, or attempt to learn the contents of [the] communications … while those communications [are] in transit." *Doe v. Eating Recovery Ctr., LLC*, No. 23-CV-05561-VC, 2025 WL 2971090 at \*6-\*7 (N.D. Cal. Oct. 17, 2025). Accordingly, to survive a motion to dismiss, Plaintiff must allege well-pled facts showing as much; conclusory assertions that merely recite that the communications were acquired "during transmission" or "in real time" are insufficient. *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017). A conclusory assertion, however, is all Plaintiff offers on this score. Compl. ¶ 186 (alleging that a third party "read, attempted to read, and/or learned the contents or meaning of electronic communications … while the electronic communications were in transit."). For this separate reason, Plaintiffs' wiretapping claim must be dismissed.

*Third*, Plaintiff fails to allege that NVIDIA aided and abetted a wiretap. Plaintiff is required to allege facts showing that NVIDIA had (1) "knowledge of the conduct that will violate the statute" and (2) "a purpose of aiding, agreeing with, or employing the third party to commit those acts."

NVIDIA CORPORATION'S
MOTION TO DISMISS                                14                    CASE NO. 5:25-CV-09160-SVK

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 936 (N.D. Cal. 2024). Plaintiff does not address those elements. The closest he comes is a conclusory assertion that NVIDIA "willfully aided" the providers of the analytics technologies in wiretapping Plaintiff, by installing their software on its website. Compl. ¶ 185. But alleging NVIDIA installed analytics software does not make a plausible showing that NVIDIA willfully aided wiretapping. After all, Plaintiff does not claim that wiretapping occurred because of the mere installation of that software, but rather because the option to opt-out of non-essential third-party cookies did not function properly. And the Complaint supplies no facts suggesting that this malfunction was the result of "willful[]" conduct by NVIDIA, as opposed to inadvertent error. In other words, Plaintiff makes no factual allegation that NVIDIA intentionally set up a faulty cookie banner to aid third parties in wiretapping Plaintiff. Plaintiff's allegations here are materially indistinguishable from those that courts have repeatedly held to be insufficient to plausibly establish aiding and abetting liability under CIPA. *Smith*, 754 F. Supp. 3d at 943 (granting motion to dismiss and finding allegations that the defendant knew third-party software was placed on its website to "collect[] consumers' sensitive information" were "insufficient to support a plausible inference that [d]efendant knowingly agreed with or employed [the software provider] to engage in conduct that violated the wiretapping statute"); *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS (KSC), 2024 WL 559241, at *1 (S.D. Cal. Feb. 12, 2024) (same). Even accepted as true, then, Plaintiff's allegations fail to indicate that NVIDIA intended to aid the illegal collection of communications without consent.

For these reasons, Plaintiff fails to state a claim for Section 631(a) wiretapping.

### 3. Plaintiff's Pen Register Claim Fails To Allege Either An Unlawful Pen Register Or Lack Of Consent (Count 4).

Plaintiff alleges that the third-party "cookies and the corresponding software code" are unlawful "pen registers" under Cal. Penal Code § 638.51, because they captured "Plaintiff's and Class members' IP address and user-agent information." Compl. ¶ 199. Plaintiff's pen register claim fails for multiple reasons.

NVIDIA CORPORATION'S
MOTION TO DISMISS
15
CASE NO. 5:25-CV-09160-SVK

### a.    Collecting IP addresses is required to operate a website and does not constitute an illegal pen register or trap and trace device.

Just recently, in *Rodriguez v. Plivo, Inc.*, No. 24STCV08972 (Cal. Super. Ct.), a California court dismissed with prejudice an effectively identical § 638.51 claim, holding that "Plaintiff's IP address is not the type of information that parties are prohibited from collecting by CIPA." Request for Judicial Notice, Ex. A. That decision built on more than a decade of case law holding that the federal prohibition on pen registers and trap and trace devices "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them." *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. Jul. 11, 2009) (discussing Pen Register Act, 18 U.S.C. § 3121). After all, if these laws "did apply" to the mere collection of incoming IP addresses, "then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the internet." *Id.*; *accord In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012).

That same analysis applies to § 638.51, which is not just analogous to, but was specifically modeled on the federal prohibition. California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015); *see also, e.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) (explaining that California courts routinely look to analogous federal laws when interpreting CIPA). The California Legislature, like Congress, did not intend to criminalize the basic functioning of the internet. Indeed, the legislative history of § 638.51 makes clear that the Legislature was concerned with "telephone surveillance"—not collection of non-telephone information like IP addresses. California Bill Analysis, A.B. 929 Assem. (Apr. 21, 2015). That makes sense: In enacting § 638.51, the Legislature worked from definitions of "'pen register' [a]s an electronic device which records all numbers called from (outgoing) a … particular *telephone line*," and a "'trap and trace device' [as a device that] records what numbers had called a specific *telephone*, *i.e.* all incoming phone numbers." California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015) (quoting Los Angeles District Attorney's Office) (emphasis added).

The Legislature wrote that understanding into the text of the law itself. CIPA requires any

NVIDIA CORPORATION'S
MOTION TO DISMISS                    16                    CASE NO. 5:25-CV-09160-SVK

court order authorizing the installation of a pen register or trap and trace device to specify "[t]he number" and "physical location of the *telephone line* to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(3) (emphasis added); *see also id.* § 638.52(c) (providing that a "pen register or trap and trace device shall not" collect the physical location of the subscriber "except to the extent that the location may be determined from the *telephone number*" (emphasis added)). These provisions make clear that CIPA conceives of a "pen register or trap and trace device" as devices that will be "attached" to a "telephone line" with a "physical location." Cal. Penal Code § 638.52(d)(3).

Plaintiff's attempt to apply § 638.51 to software that collects website visitors' IP addresses cannot be squared with that legislative history. In direct contrast to the statutory text, the software at issue here is alleged to be installed on a website (not a "telephone line"), which has neither an associated phone "number" nor a "physical location." Indeed, it has nothing to do with telephone lines, telephone numbers, or telephone surveillance at all. Accordingly, it falls well outside the scope of § 638.51's prohibition, as *Plivo* soundly recognized when dismissing indistinguishable allegations. Ex. A, at 7-8. The prohibitions of § 638.51 are inapplicable to Plaintiff's claims.

### b.    Plaintiff consented to the recording of his IP address in any event.

In any event, even if § 638.51 applied and required Plaintiff's consent here, Plaintiff gave it when he voluntarily navigated to NVIDIA's Website. Consent to recording exists under CIPA where a plaintiff proceeds in circumstances where "a reasonably prudent user would have been aware" that their information was being recorded. *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. Jul. 28, 2021); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (individual who "actually expected the [communication] to be recorded" can be deemed to "have implicitly consented to the recording by the very act of" initiating the communication).

That is the case here. As courts have explained, any reasonable website user who voluntarily navigates to a website would understand in advance that his IP address "information [would be] provided" as part of that interaction. *Heeger*, 509 F. Supp. 3d at 1190 (quoting *Forrester*, 512 F.3d

NVIDIA CORPORATION'S
MOTION TO DISMISS
CASE NO. 5:25-CV-09160-SVK

at 510). After all, any such website user *must* "voluntarily turn[] over" their IP address "in order to direct" the routing used to access the website—it is "inevitable that [a website] learns a [visitor]'s IP address" when they navigate to it. *Id.* at 1189-90. Indeed, for precisely this reason, courts have long held that internet users do not have any expectation of privacy in their IP addresses or the IP addresses of the websites they visit. *Id.* at 1190; *Forrester*, 512 F.3d at 510.

To be clear, Plaintiff's assertion that NVIDIA failed to abide by his preferences for sharing information via third-party cookies is irrelevant as to his pen register claim. The pen register statute applies only to the "record[ing]" of the data; it does not regulate any subsequent sharing of data. Cal. Penal Code § 638.50(b). Here, there is no way for a website visitor—regardless of what cookie preferences they select—to block the website from recording his IP address. To the contrary, as just explained, the website visitor must turn over his IP address in order to access the website. *Heeger*, 509 F. Supp. 3d at 1190.

Because Plaintiff "consensually engaged in [an internet] transaction" and "communicated [his] IP address[es] as part of" that transaction, the laws prohibiting pen registers and trap and trace devices "cannot prevent [the recipient] from recording that information." *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013).

### 4. Plaintiff's Common-Law Fraud, Deceit, And Misrepresentation Claim Fails To Allege Damages, Intent, Or Knowledge Of Falsity (Count 5).

Plaintiff fails to plead his fraud claim with "sufficient particularity" to satisfy the heightened pleading standard for claims based in fraud. Fed. R. Civ. P. 9(b). This cause of action requires pleading (1) a misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009). To be sufficiently particular, plaintiff must plead specific "facts demonstrating that defendants knew the statements were false when they made them." *Id.* at 1080 (dismissing fraud claims); *In re Zoom Video Communs. Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) ("[A]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged"). Here, Plaintiff claims that NVIDIA made a material misrepresentation because, despite NVIDIA's cookie banner stating that users "could 'Decline All' cookies," the

NVIDIA CORPORATION'S
MOTION TO DISMISS
18

Website caused third-party cookies and software code to be served. Compl. ¶¶ 206-07. Plaintiff's allegations lack particularity as to several elements.

First, Plaintiff fails to allege facts showing NVIDIA knew it was making a false statement. Plaintiff makes a conclusory allegation that NVIDIA "knew, or should have known" that cookies were being placed on Plaintiff's browsers and devices even after he chose to "Decline All" non-essential cookies. Compl. ¶ 208. But Plaintiff does not supply any facts in support of that assertion as Rule 9(b) requires, such as when and how NVIDIA knew about the purported misrepresentation. Further, in California, Plaintiff is required to allege facts that show NVIDIA *actually* knew that the statement was false or otherwise acted with reckless disregard for its truth or falsity. *Wishnick v. Frye*, 111 Cal. App. 2d 926, 930, (1952) ("[T]o satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant."); Cal. Civ. Code § 1710; *Ash v. Bank of Am. N.A.*, No. 2:10-CV-02821-KJM-KJN, 2014 WL 301027, at *13 (E.D. Cal. Jan. 28, 2014) ("The second element is the requirement of showing scienter: it must be shown that defendant knew the statement was false or acted with reckless disregard of its truth or falsity."). Plaintiff makes no such showing.

Second, Plaintiff's allegations as to NVIDIA's "intent to defraud" is lacking. "[M]erely conclusory" allegations of "scienter and intent to defraud" are insufficient to state a claim. *Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK (FFMx), 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009); *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. Jul. 1, 2021) (dismissing fraud-based claims; "[T]he 3AC is void of facts [suggesting] that . . . Google, at the time of the alleged misrepresentations, had the intent to mislead or omit material information . . .") (emphasis in original). There are no facts alleged that establish NVIDIA intended to deceive the Website's users.

Third, Plaintiff fails to allege he suffered damages. As discussed above in Section V.A.1, Plaintiff offers conclusory allegations of loss of money and property but fails to specify what money or property was lost. Additionally, as explained above, Plaintiff's claim of harm from a purported

loss of control and value of his information and communications has been rejected by courts as insufficient to survive Rule 8, much less Rule 9(b). *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (van Keulen, J.) ("Plaintiffs do not allege sufficient facts from which the Court may reasonably infer that Defendants' misappropriation reduced the value of Plaintiffs' information…. [T]hey merely allege . . . 'there is a market for consumers to monetize Personal Information.'").

Because Plaintiff fails to state a claim for fraud, this claim too should be dismissed.

### 5. Plaintiff's Unjust Enrichment Claim Is Duplicative Of Plaintiff's Tort And Statutory Claims (Count 6).

Plaintiff fails to state a claim for unjust enrichment, which requires allegation of "receipt of a benefit and unjust retention of the benefit at the expense of another." *Silver*, 2021 WL 3191752, at *8. Here, Plaintiff "pleads this claim separately, as well as in the alternative, to his other claims." Compl. ¶ 226. But under California law, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Brodsky v. Apple Inc.*, No. 19-cv-00712, 2019 WL 4141936, at *10 (N.D. Cal. Aug. 30, 2019) ("[C]ourts have consistently dismissed stand-alone claims for unjust enrichment."). Thus, Plaintiff may not plead this claim as a stand-alone claim.

Plaintiff's attempt to plead in the alternative fares no better. An alternate claim for unjust enrichment is "at best . . . a species of fraud." *Silver*, 2021 WL 3191752, at *8 (citing *Moose Run, LLC v. Libric*, No. 19-cv-01879-MMC, 2020 WL 3316097, at *5 (N.D. Cal. June 18, 2020)) ("A cause of action titled 'unjust enrichment,' however, can be construed as a claim that the plaintiff is entitled to restitution under the theory 'the defendant obtained a benefit from the plaintiff by fraud.'"). Thus, an "unjust enrichment" claim is not an independent tort claim, but rather an attempt to seek "restitution on a quasi-contract theory (an election referred to at common law as waiving the tort and suing in assumpsit)." *Id.* However, Plaintiff pleads his unjust enrichment claim by merely replicating the same allegations to support his fraud-based tort claims (common-law fraud, deceit, and misrepresentation and privacy claims) and statutory claims (wiretapping and pen register violations under CIPA). "Under such circumstances, plaintiffs are not entitled to restitution

NVIDIA CORPORATION'S
MOTION TO DISMISS
CASE NO. 5:25-CV-09160-SVK

under a quasi-contract theory." *Id.*; *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."). This is especially so where plaintiffs have not alleged that they were "misled or that defendant breached any express or implied covenant as it relates" to the alleged conduct. *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020).

The unjust enrichment claim should be dismissed.

## V.     CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety. And because the defects in Plaintiffs' Complaint cannot be cured, that dismissal should be with prejudice.

Dated: January 16, 2026

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Ali Abugheida*

ALI ABUGHEIDA (SBN 285284)
aabugheida@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:        +1 415 773 5700
Facsimile:        +1 415 773 5759

*Attorney for Defendant*
*NVIDIA Corporation*