**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY PENNING, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 5:25-cv-09160-SVK<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>Hon. Susan van Keulen |

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................1

II. FACTUAL ALLEGATIONS ....................................................................2

III. LEGAL STANDARD ...............................................................................3

IV. ARGUMENT ..........................................................................................3

A. California Law Applies. .........................................................................3

B. Plaintiff Alleges That Defendant's Terms Were Unenforceable Browsewrap. ..................................................................................5

C. Defendant Fails to Prove the Existence of an Agreement to Arbitrate. ........5

D. Defendant's Motion Establishes That There Was No Arbitration Agreement. ..................................................................................7

V. CONCLUSION ........................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 5

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........ 3, 8, 9

*Dawson v. Target Corp.*,
No. 3:24-cv-08167-AMO, 2025 U.S. Dist. LEXIS 111315
(N.D. Cal. June 11, 2025) ........ 10

*Echeverria-Corzan v. Michaels Stores, Inc.*,
No. 25-cv-5839-YGR, ECF No. 38 (N.D. Cal. Feb. 6, 2026) ........ 8

*Ellis v. Wallet Buddha LLC*,
No. 25-cv-1533-MWF, 2025 U.S. Dist. LEXIS 266800 (C.D. Cal. Dec. 29, 2025) ........ 8

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 4, 10

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) ........ 3

*In re Stubhub Refund Litig.*,
No. 22-15879, 2023 U.S. App. LEXIS 20687 (9th Cir. Aug. 9, 2023) ........ 9

*L.B. v. LinkedIn Corp.*,
No. 5:24-cv-06832-EJD, 2025 U.S. Dist. LEXIS 193980
(N.D. Cal. Sep. 30, 2025) ........ 11

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 11

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (2016) ........ 4

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 5

*Norcia v. Samsung Telecomms. Am., LLC*,
No. 14-cv-00582-JD, 2014 U.S. Dist. LEXIS 131893, (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017) ........ 3

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 5

*Ridder v. Roblox Corp.*,
No. 3:23-cv-04146-VC, 2025 U.S. Dist. LEXIS 256455
(N.D. Cal. Oct. 31, 2025) ........ 7

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ........ 4

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) ........ 10

*Sifuentes v. Dropbox, Inc.*,
No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273
(N.D. Cal. June 29, 2022) ........ 3

*Weeks v. Interactive Life Forms, LLC*,
100 Cal. App. 5th 1077 (2024) .......... 5

**OTHER AUTHORITIES**

Edwards, Jeffrey
*GDPR Cookie Compliance 101: How to Manage EU Users' Consent*, CHEQ
(Jan. 18, 2023) .......... 7

## I. INTRODUCTION

Plaintiff Stacy Penning ("Plaintiff") brings this class action lawsuit against NVIDIA Corporation ("Defendant" or "NVIDIA") for enabling third parties to intercept and collect vast swaths of class members' data against their express instructions and in violation of Defendant's express promise to protect that information. Hoping to avoid this lawsuit, Defendant seeks to compel Plaintiff to arbitrate his claims on an individual basis—without any evidence that Plaintiff actually agreed to Defendant's arbitration terms. In fact, Defendant's motion is not just insufficient, it is self-defeating.

In the Complaint, Plaintiff includes screenshots of the pop-up cookie consent banner and ensuing "Cookie Settings" window that he saw when he visited Defendant's website. ECF No. 1 ("Compl.") ¶¶ 27-28. Neither of these screens mentions Defendant's Terms of Service or includes any statement indicating that Plaintiff would be bound by any arbitration terms by choosing to reject non-essential cookies. Plaintiff's only conduct was visiting the website, expressly rejecting non-essential cookies (including third-party tracking and advertising cookies), and browsing the site. But merely browsing a website does not constitute agreement to the website terms. Disregarding these allegations, Defendant speculates that, in 2025, Plaintiff *may* have seen a different version of the cookie banner than the one alleged in the Complaint, and *might* have clicked on a button in that later banner. But these facts are nowhere in the Complaint, nor can they be inferred from the Complaint or from the limited evidence submitted in support of Defendant's motion. Accordingly, Defendant utterly fails to carry its burden to prove the formation of an applicable agreement to arbitrate.

Moreover, even if Defendant could, in the future, present evidence that: (a) one of the two banner versions depicted in the Declaration of William Lee (ECF No. 14-1) was actually presented to Plaintiff (although websites typically do not display cookie banners to users who have previously set their cookie preferences); and (b) Plaintiff clicked "Manage Settings" or "Turn Off Optional Cookies" (depending on the version in question and depending on evidence as to what Plaintiff saw or did); Defendant's motion would *still* fail because those facts are legally insufficient to establish that Plaintiff agreed to Defendant's Terms of Service.

For these reasons, this Court should deny Defendant's motion in its entirety.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that when consumers visited Defendant's website (www.nvidia.com, the "Website"), Defendant displayed to them the following popup cookie consent banner:




*Id.* ¶¶ 1, 27. The banner presented consumers with a choice to click one of two large buttons: "Manage Cookies" or "I Understand." The buttons were preceded by text, in small font, stating: "NVIDIA uses cookies to enable and improve the use of the website. Please see our Cookie Policy for more information. You can manage your cookies settings by clicking 'Manage Cookies' or going to the NVIDIA Privacy Center." *Id.* The version of the cookie banner referenced in the Complaint does not mention Defendant's Terms of Service at all. Nor does the Cookie Settings window, as shown in the following screenshot:



*Id.* ¶ 28.

Plaintiff viewed Defendant's representations on the popup cookie consent banner. *Id.* ¶ 136. Consistent with his typical practice in managing or otherwise declining the placement or use of cookies and tracking technologies, Plaintiff selected and clicked the "Manage Cookies" button, which launched Defendant's Cookie Settings window. *Id.* ¶ 137. Plaintiff selected and clicked the "Decline All" button, which caused both the popup cookie consent banner and Cookie Settings window to disappear, allowing Plaintiff to browse the Website, which he then proceeded to do. *Id.* ¶ 138.

## III. LEGAL STANDARD

"The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of evidence." *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025). "[T]he party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences." *Sifuentes v. Dropbox, Inc.*, No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273, at *7 (N.D. Cal. June 29, 2022). "In making this threshold inquiry, there is no thumb on the scale in favor of finding an arbitration agreement to exist." *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2014 U.S. Dist. LEXIS 131893, at *10 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) ("If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

## IV. ARGUMENT

### A. California Law Applies.

In determining whether a valid arbitration agreement exists, the Court must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Here, because Plaintiff is a California citizen who visited Defendant's Website while in California, California law governs the question of whether Plaintiff agreed to Defendant's Terms of Service. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (applying California law, while noting that "no differences exist in the law of the different states as to internet contract formation"); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 462 n.4 (2021) (applying California law to question of contract formation despite choice-of-law provision in the terms at issue).

Under California law, "[a]n offeree, regardless of apparent manifestation of her consent, is not bound by inconspicuous contractual provisions of which she was unaware, contained in a document whose contractual nature is not obvious." *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 862 (2016) (internal quotation marks omitted). Website terms, such as NVIDIA's Terms of Service, will be enforced against a consumer only if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) ("[T]here must be actual or constructive notice of the agreement and the parties must manifest mutual assent.").

There are a variety of ways in which websites purport to impose terms on website users. On one end of the analytical spectrum are "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use;" and on the other end of the spectrum are "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); *see also Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1085 (2024) (describing the same analytical framework). Courts do not enforce browsewrap terms but generally find clickwrap agreements to be enforceable. *See Berman*, 30 F.4th at 856, 868; *Weeks*, 100 Cal. App. 5th at 1085 (explaining "[c]lickwrap agreements have been held to manifest assent, even on consumers who did not read them," but "browsewrap does not require the user to take any unambiguous action to agree to the terms of use," so courts generally find "browsewrap agreements to be unenforceable").

Between these two extremes are hybrid cases (sometimes called "sign-in wrap") where a website purports to notify a user that taking some action, such as clicking a button, constitutes acceptance of certain linked terms. These purported notices "do not require the consumer to review those terms or to expressly manifest their assent to those terms by checking a box or clicking an 'I agree' button. . . . Thus, it is not apparent that the consumer is aware that they are agreeing to contractual terms simply by

clicking some other button." *Sellers*, 73 Cal. App. 5th at 471; *see also Godun*, 135 F.4th at 708-10 (applying the "inquiry-notice 'sign-in wrap' analytical framework").

**B. Plaintiff Alleges That Defendant's Terms Were Unenforceable Browsewrap.**

In the Complaint, Plaintiff includes screenshots of the pop-up cookie consent banner and ensuing "Cookie Settings" window that he saw when he visited Defendant's website. Compl. ¶¶ 27-28. Neither of these screens mentions Defendant's Terms of Service or includes any statement indicating that Plaintiff would be bound by any arbitration terms by choosing to reject non-essential cookies. Plaintiff's only conduct was visiting the website, expressly rejecting performance and advertising cookies, and browsing the site. *Id.* ¶¶ 135-41. Based on these allegations and controlling Ninth Circuit authority, Plaintiff did *not* agree to Defendant's Terms of Service. *See Nguyen*, 763 F.3d at 1178–79 ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.").

**C. Defendant Fails to Prove the Existence of an Agreement to Arbitrate.**

It is Defendant's burden to prove the existence of the alleged arbitration agreement, with Plaintiff receiving "the benefit of all reasonable doubts and inferences." *Sifuentes*, 2022 U.S. Dist. LEXIS 125273, at *7. Here, Defendant has not established that—despite Plaintiff's clear allegations to the contrary—Plaintiff agreed to its Terms of Service.

First, NVIDIA has not submitted the Terms of Service to which Plaintiff allegedly agreed (*see* ECF No. 14-1 (referencing but not attaching the Terms of Service as Exhibit A)), so there is no putative arbitration agreement for Plaintiff or the Court to even consider. *See Ridder v. Roblox Corp.*, No. 3:23-cv-04146-VC, 2025 U.S. Dist. LEXIS 256455, at *3 (N.D. Cal. Oct. 31, 2025) (finding defendant failed to submit an applicable arbitration clause "and therefore falls far short of satisfying his burden to prove that an arbitration agreement existed").

Second, Defendant speculates that, if Plaintiff visited in 2025,[1] he would have been presented with one of the versions of the pop-up cookie banner depicted in the Declaration of William Lee (ECF No. 14-1). But websites typically do *not* display cookie banners to users who have previously set their cookie preferences. *See, e.g.,* Edwards, Jeffrey; *GDPR Cookie Compliance 101: How to Manage EU Users' Consent*, CHEQ (Jan. 18, 2023) ("A user's decision to opt-out must be duly-recorded and enforced, and an opt-in may not be repeatedly solicited. Site owners may not resubmit a consent banner to users who denied it at each new access to the website."), https://cheq.ai/blog/gdpr-cookie-compliance-101/ (last visited Feb. 20, 2026). Accordingly, even if Plaintiff visited the Website in 2025 (after previously visiting and rejecting cookies), NVIDIA has not established that Plaintiff would have seen one of the versions of the pop-up cookie banner that NVIDIA contends he saw.

Defendant further speculates that, if Plaintiff was presented with a newer version of the cookie banner in 2025, he would have clicked "Manage Settings" or "Turn Off Optional Cookies," depending on the version in question. But Plaintiff's allegation about his typical practice when dealing with cookie banners (Compl. ¶ 137) does not establish what, if anything, actually occurred in 2025.

In sum, Defendant's motion simply piles speculation on top of speculation; it does not present actual evidence of an agreement by Plaintiff to arbitrate his claims. Defendant has not come close to carrying its burden of proof that such an agreement was formed. *See Ellis v. Wallet Buddha LLC*, No. 25-cv-1533-MWF, 2025 U.S. Dist. LEXIS 266800, at *12 (C.D. Cal. Dec. 29, 2025) (defendant failed to present competent evidence that an arbitration agreement was ever formed); *Echeverria-Corzan v. Michaels Stores, Inc.*, No. 25-cv-5839-YGR, slip op. (ECF No. 38) at 6 (Feb. 6, 2026) (finding "defendant has not met its burden to show there is no dispute regarding [plaintiff's] assent to an arbitration agreement," where there was no specific evidence, aside from a conclusory statement in a

---

[1] In making this assumption, Defendant largely relies on the fact that Plaintiff's complaint shows a screenshot of a search bar, which Defendant claims was available to California visitors beginning only in 2025. But the Complaint does not allege that the screenshot was captured by Plaintiff, just that it is an example of a search bar on the Website, so it is not evidence of the date of a particular visit by Plaintiff.

declaration, that the plaintiff had signed up for a rewards account) (copy attached to Thairani Decl. as Ex. 1). Accordingly, Defendant's motion must be denied.

**D. Defendant's Motion Establishes That There Was No Arbitration Agreement.**

Even if the Court were to assume all of the above facts in Defendant's favor, Defendant still cannot establish that Plaintiff agreed to the Terms of Service. As the Ninth Circuit has explained:

> Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print. While terms may be disclosed through hyperlinks, the presence of a hyperlink must be readily apparent, **and simply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists**.

*Chabolla*, 129 F.4th at 1156 (emphasis added) (internal quotation marks and citations omitted). Moreover, in determining whether notice of binding terms was sufficiently conspicuous, courts must consider that a user engaged in a limited online transaction (such as a website visit or isolated purchase) is less likely to be looking for binding terms than a user establishing a continuing relationship (such as signing up for an account or subscription). *Id.* at 1155-56.

Defendant contends that there were two versions of its cookie banner in use in 2025. Each one had large buttons at the bottom, by which a user could "Manage Settings" or "Agree" (in the first version) (ECF No. 14-1 ¶ 6) or "Manage Settings," "Turn Off Optional Cookies," or "Agree" (in the second version) (*id.* ¶ 10). In both versions, there was a paragraph of text, in small font, above these buttons. In each case, the paragraph begins with a sentence or two noting that NVIDIA and its third-party partners use cookies. *Id.* Then, in the second or third sentence of the paragraph, NVIDIA states that clicking one of the buttons in the banner constitutes consent to the use of cookies and (following all of that) to the Terms of Service. *Id.*

NVIDIA's reference to the Terms of Service, belatedly and unexpectedly in the context of the cookie banner, did not provide sufficient notice to reasonable consumers that they were agreeing to such terms. The phrase "Terms of Service," while underlined: (1) was **not** itself in contrasting, bright blue or green font but rather in the same font color as the other words in the paragraph in which it appeared; (2) was smaller than the larger, bolded text inside the action buttons, where the user's attention was drawn; (3) was neither bolded nor in all capital letters; and (4) appeared toward the end of a lengthy

disclosure about the use of cookies. Accordingly, the hyperlink was not sufficiently conspicuous to place a reasonable user on notice that rejecting cookies and browsing Defendant's Website constituted agreement to Defendant's Terms of Service. *See Chabolla*, 129 F.4th at 1157 (finding a statement that "By clicking 'Sign up with Facebook' or 'Continue,' I agree to the Terms of Use and Privacy Policy" did not provide sufficient notice of the terms where a reasonable user was likely to click "Continue" without reading the statement, particularly where the font used for the statement and hyperlink was "timid"); *In re Stubhub Refund Litig.*, No. 22-15879, 2023 U.S. App. LEXIS 20687, at *6-7 (9th Cir. Aug. 9, 2023) (the text of the hyperlink was gray rather than bright blue, and not sufficiently conspicuous); *Berman*, 30 F.4th at 856-57 (noting the hyperlinked text was underlined but not "in a contrasting font color (typically blue)" and not in "all capital letters," and explaining that "[s]imply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists"); *Dawson v. Target Corp.*, No. 3:24-cv-08167-AMO, 2025 U.S. Dist. LEXIS 111315, at *9 (N.D. Cal. June 11, 2025) ("The hyperlinks and preceding disclaimers on those screenflows are too inconspicuous to confer reasonable notice because they are presented in a small text size, difficult to read, and are not sufficiently obvious or set apart from the rest of the text on the screen."); *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096-97 (C.D. Cal. 2023) (the text was smaller than the font in the button, was less noticeable, and the hyperlink to the terms was only underlined but not in "bright blue font nor all capital letters to attract a user's attention"); *Sellers*, 73 Cal. App. 5th at 480-81 (noting "the hyperlink to the terms of service is underlined, but it is not set apart in any other way that may draw the attention of the consumer, such as with blue text or capital letters").

Defendant's failure to present the Terms of Service in a more conspicuous manner is particularly deficient in a context where a user would not be expecting to agree to arbitration and other contractual terms. *See Godun*, 135 F.4th at 709-10 (courts should consider the full context of the transaction, such as whether the transaction reasonably implies a continuing contractual relationship); *Berman*, 30 F.4th at 868 (Baker, J., concurring) (where the online interactions do not clearly propose continuing relationships, "the conspicuousness of these sites' textual notices must undergo the most rigorous scrutiny, because a reasonably prudent user would not have been on the lookout for fine print"); *Sellers*,

73 Cal. App. 5th at 476-77 (noting "a consumer that does not expect to be bound by contractual terms is less likely to be looking for them"). Here, Plaintiff was not seeking to enter a continuing relationship with NVIDIA; to the contrary, by rejecting cookies, Plaintiff was seeking to keep his interactions with the Website as isolated as possible. Moreover, almost all websites use pop-up cookie banners at this point, so most users are familiar with them and will automatically click one of the buttons without reading the preceding paragraph. To the extent they begin reading the paragraph, most users will quickly understand from the first few words that it is about cookies and then click one of the buttons without reading further. Reasonable consumers do not scrutinize the entire paragraph of every cookie banner with the expectation that they will be agreeing to extensive terms, including arbitration.

NVIDIA relies on two cases to argue that its 2025 cookie banners provided sufficient notice to users that they were agreeing to the Terms of Service, but this reliance is misplaced. One of the cases involves substantially different facts. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054-55 (N.D. Cal. 2025) (plaintiffs consented to the use of cookies three times, as such consent was required to use the website, to create an account, and to make a purchase). The other is also distinguishable, as the plaintiff did not challenge the conspicuousness of the hyperlink (*L.B. v. LinkedIn Corp.*, No. 5:24-cv-06832-EJD, 2025 U.S. Dist. LEXIS 193980, at *29 n.8 (N.D. Cal. Sep. 30, 2025)) and the pop-up specifically asked visitors to "ACCEPT" the "Cookies Policies," which (unlike the alleged arbitration terms at issue here) went to the merits of the claims at issue (and thus the plaintiff arguably should have been more attentive to it). *Id.* at *23-31 (finding the pop-up provided adequate notice that browsing the website constituted agreement to the "Cookies Policy"). In any event, to the extent *L.B.* can be applied to the facts here, it is contrary to the weight of the case law cited above.

In short, the cookie banners submitted by Defendant establish that Defendant did *not* provide Plaintiff with sufficient notice of the arbitration terms that Defendant seeks to impose on Plaintiff.

## V. CONCLUSION

For these reasons, the Court must deny Defendant's Motion to Compel Arbitration.

Dated: February 20, 2026

Respectfully submitted,

*/s/ Rajiv V. Thairani*

**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*