**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
  rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY PENNING, an individual, on behalf of himself, the general public, and those similarly situated, | Case No. 5:25-cv-09160-SVK |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| v. | Hon. Susan van Keulen |
| NVIDIA CORPORATION, | |
| Defendant. | |

PL.'S OPP. TO DEF'S MOT. TO DISMISS – CASE NO. 5:25-CV-09160-SVK

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL ALLEGATIONS ............................................................................. 2

III.  LEGAL STANDARD ........................................................................................ 4

IV.   ARGUMENT ...................................................................................................... 4

    A.    Plaintiff Pleads a Concrete Injury-in-fact. ............................................. 4

    B.    Plaintiff's Allegations Satisfy Rule 9(b). ............................................... 9

    C.    Defendant's 12(b)(6) Arguments Fail. .................................................. 11

        1.    Plaintiff Alleges That Defendant's Invasion of Privacy Was Highly Offensive. (Claims 1 and 2) .................................................. 11

        2.    Plaintiff Adequately Alleges Wiretapping. (Claim 3) .......................... 13

        3.    Plaintiff Adequately Pleads a Violation of Section 638.5. (Claim 4) ... 17

        4.    Plaintiff Adequately Pleads Damages, Intent, and Knowledge of Falsity. (Claim 5) ................................................................................ 19

        5.    Plaintiff's Unjust Enrichment Claim Is Adequately Pled in the Alternative of His Legal Claims. (Claim 6) .......................................... 21

    D.    Leave to Amend Should Be Granted. .................................................... 22

V.    CONCLUSION ................................................................................................. 22

PL.'S OPP. TO DEF'S MOT. TO DISMISS – CASE NO. 5:25-CV-09160-SVK

# TABLE OF AUTHORITIES

## CASES

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480
(N.D. Cal. Oct. 25, 2024) ................................................................................. 31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 5

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ........................................................................... 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................... 5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .................................................. 6, 9, 16, 20

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760
(N.D. Cal. Mar. 10, 2022) ................................................................................ 13

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) .................................................................... 31

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ............................................................... 9

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........................................................................... 7

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ............................................................................. 6

*Cedar Park Assembly of God of Kirkland v. Kreidler,*
130 F.4th 757 (9th Cir. 2025) .......................................................................... 12

*De Ayora v. Inspire Brands, Inc.*,
No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583
(N.D. Cal. Dec. 22, 2025) ........................................................................... 14, 15

*Doe v. Amgen, Inc.*,
No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ................... 24

*Doe v. Eating Recovery Ctr., LLC*,
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ................................ 21

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .............................................................. 22

*Esparza v. UAG Escondido A1 Inc.,*
No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429
(S.D. Cal. Feb. 12, 2024) ................................................................................. 22

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503
(N.D. Cal. Aug. 29, 2025) ........................................................................ 3, 10, 11

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836
(N.D. Cal. July 14, 2025) ........................................................................................... 3, 13, 14

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................................................................ 26, 27

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069
(N.D. Cal. July 18, 2022) ................................................................................................... 17

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ............................................................................... 17

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ............................................................................... 19

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ............................................................................................................. 18

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588
(N.D. Cal. Jan. 13, 2025) .................................................................................................... 30

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ............................................................................... 8

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................................... 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........................................................................................ passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................... 31

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316, 325 (3d Cir. 2019) ............................................................................... 1, 7, 10

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......................................................................... 9, 16

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................................. 17

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) .................................................................. 17

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................................. 23

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ...................................................................................... 18, 19

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ............................................................................. 29

*Jackson v. Linkedin Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ............................................................................... 21

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ......................................................................... 23, 24

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) ............................................................. 6

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................... 16, 19, 31

- iii -

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......................................................................................... 12

*Kirkland v. Kuderer*,
146 F.4th 885 (9th Cir. 2025) ........................................................................................... 12

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565
(C.D. Cal. Sep. 3, 2024) .................................................................................................... 24

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .............................................................................. 6

*Malibu Media LLC v. Pontello*, No. 13-12197, 2013 WL 12190709 (E.D. Mich.
Nov. 19, 2013) ................................................................................................................... 28

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ............................................................................... 19

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12,
2024) ................................................................................................................................... 26

*Mitchell v. Sonesta Int'l Hotels Corp.*,
No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct.
4, 2024) ......................................................................................................................... 21, 22

*Mitchener v. Curiositystream, Inc.*, No. 25-cv-01471-NW, 2025 U.S. Dist. LEXIS
155489 (N.D. Cal. Aug. 6, 2025) ........................................................................................ 8

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ................................................................................................. 14

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) ........................................................................................... 10

*Price v. Converse, Inc.*, 805 F. Supp. 3d 1102 (C.D. Cal. 2025) ....................................... 9

*Radek Barnert v. HP, Inc.*,
No. 21-cv-05199-SVK, 2021 U.S. Dist. LEXIS 259220 (N.D. Cal. 2021) ......................... 6

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23,
2019) ............................................................................................................................. 18, 24

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ................................................................................................... 21, 22

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-00225-AJB-KSC, 2025 U.S. Dist. LEXIS 216362
(S.D. Cal. Nov. 3, 2025) ...................................................................................................... 9

*Rodriguez v. Google LLC ("Rodriguez I")*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074
(N.D. Cal. May 21, 2021) ................................................................................................... 15

*Rodriguez v. Google LLC ("Rodriguez II")*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290
(N.D. Cal. Jan. 3, 2024) ..................................................................................................... 30

*Rodriguez v. Google LLC ("Rodriguez III")*,
772 F. Supp. 3d 1093, 1111 (N.D. Cal. 2025) ................................................................... 9

*Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609 (Ct. App. 1995) ........................... 30

PL.'S OPP. TO DEF'S MOT. TO DISMISS – CASE NO. 5:25-CV-09160-SVK

*Shah v. Capital One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ................................................................................ 31

*Shah v. Fandom, Inc.*,
    754 F. Supp. 3d 924 (N.D. Cal. 2024) ............................................................................ 26, 27

*Silver v. Stripe, Inc.*,
    No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) ...................... 16

*Smith v. Google, LLC*,
    735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................................ 12

*Smith v. Yeti Coolers, LLC,* 754 F. Supp. 3d 933, 938 (N.D. Cal. 2024) ............................ 24, 25

*Spokeo Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................................ 5

*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*,
    120 Cal. App. 3d 412 (Ct. App. 1981) .................................................................................. 29

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist.
    LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......................................................... 15, 19, 22, 23

*Thomas v. Papa Johns Int'l, Inc.*,
    No. 22cv2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8,
    2024) ................................................................................................................................. 8, 9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................................................ 6

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ................................................................................................ 17

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) ............................................................................ 20, 22

*Walsh v. Dollar Tree Stores, Inc.*,
    No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16,
    2025) ............................................................................................................................... passim

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ................................................................................ 18

*Yockey v. Salesforce, Inc.*,
    688 F. Supp. 3d 962 (N.D. Cal. 2023) .................................................................................... 2

*Yoon v. Lululemon United States*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................................ 18

**STATUTES**

Cal. Civ. Code § 1709 ................................................................................................................ 29, 30

Cal. Civ. Code § 3333 ...................................................................................................................... 29

Cal. Penal Code § 631 ......................................................................................................... 21, 22, 23

Cal. Penal Code § 631(a) .................................................................................................................. 21

Cal. Penal Code § 638.5 ............................................................................................................. 26, 27

Cal. Penal Code § 638.50(b) ............................................................................................................ 27

Cal. Penal Code § 638.51 ................................................................................................................. 26

Cal. Penal Code § 638.51(a) ............................................................................................................ 25

Cal. Penal Code § 638.51(b) ............................................................................................................ 27

PL.'S OPP. TO DEF'S MOT. TO DISMISS – CASE NO. 5:25-CV-09160-SVK

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 2

Fed. R. Civ. P. 9(b) ................................................................................................... passim

PL.'S OPP. TO DEF'S MOT. TO DISMISS – CASE NO. 5:25-CV-09160-SVK

## I.    INTRODUCTION

Plaintiff Stacy Penning ("Plaintiff") brings suit against NVIDIA Corporation ("Defendant" or "NVIDIA") for aiding Third Parties to collect Plaintiff's private information against Plaintiff's express instructions, and in violation of Defendant's express promise to protect that information. In particular, Defendant surreptitiously placed third-party tracking cookies on Plaintiff's device *after* he explicitly rejected and opted out of such cookies by clicking "Decline All." As a result, Defendant caused the Third Parties to collect vast swaths of Plaintiff's data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" ***despite explicitly promising not to do so***. ECF No. 1 ("Compl.") ¶ 3.

Defendant repeatedly attempts to recast Plaintiff's allegations as a challenge to routine and necessary website functionality. That is incorrect. Plaintiff does not dispute the use of cookies that are strictly necessary to operate the Website. Rather, he was given the option to reject marketing and other ***non-essential*** tracking technologies. This case concerns Defendant's alleged disregard of that promise—not ordinary website operations. Indeed, Defendant's arguments mostly just parrot the arguments that this Court recently considered and largely rejected in *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *61 (N.D. Cal. Oct. 16, 2025) (van Keulen, J.).

First, Defendant incorrectly contends that Plaintiff lacks standing to sue because he does not allege an "injury in fact." But invasion of privacy and intrusion upon seclusion are traditionally recognized harms. Accordingly, "a concrete injury for Article III standing purposes occurs when [any third party] *tracks* a person's internet browser activity without authorization." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019). Moreover, CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)).

Defendant's Rule 9(b) arguments are also misplaced. The heightened standard applies only to Plaintiff's fraud claim, not to his statutory claims or privacy claims. In any event, the Complaint details the who, what, when, where, and how of Defendant's misrepresentations, easily satisfying Rule 9(b).

- 1 -

The remainder of Defendant's Rule 12(b)(6) arguments fail as well. As to Counts 1 and 2, Defendant's contention that its conduct was not "highly offensive" and that users lacked a reasonable expectation of privacy ignores the Complaint's central allegation: Defendant expressly represented that users could "Decline All" optional tracking and then disregarded that choice—conduct courts have repeatedly held sufficient to state privacy claims. As to Count 3, Plaintiff adequately alleges interception of "contents," including specific allegations regarding Plaintiff's search queries, which is more than sufficient at the pleading stage. As to Count 4, Defendant's attempt to confine § 638.51 to traditional telephone technology cannot be reconciled with the statute's plain language, which broadly regulates the use of devices or processes that capture routing or addressing information in electronic communications. As to Count 5, Plaintiff plausibly pleads fraud, including knowledge and intent, and alleges legally cognizable injury flowing from Defendant's misrepresentations. Finally, as to Count 6, Plaintiff adequately pleads unjust enrichment in the alternative by alleging that Defendant obtained and retained the economic benefit of Plaintiff's private data through deceptive practices, and that equity requires restitution if legal remedies prove inadequate.[1]

For these reasons, this Court should deny Defendant's motion in its entirety.

## II.    FACTUAL ALLEGATIONS

When consumers visit Defendant's website (www.nvidia.com, the "Website"), Defendant displays to them a popup cookie consent banner:

---

[1] Defendant notes that Plaintiff's counsel has filed similar actions against other companies based on comparable allegations. This is a distraction. The question before the Court is whether the Complaint plausibly alleges that Defendant engaged in unlawful conduct. Courts, including this one, have repeatedly recognized the answer is yes. *See, e.g., Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *43 (N.D. Cal. July 14, 2025) (Tigar, J.) (denying motion to dismiss claims for invasion of privacy, intrusion of seclusion, wiretapping, unlawful pen register, common law fraud and unjust enrichment, based on similar conduct); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *42 (Orrick, J.) (N.D. Cal. Aug. 29, 2025) (same).

*Id.* ¶ 1. Defendant's cookie banner discloses that the Website uses cookies but expressly gives users the option to control how they are tracked and how their personal data is used. Defendant assures visitors that they can "Manage Cookies" and gives users the option to "Decline All," as shown in the following screenshot:



Despite its representing that it would not use cookies or share user information with third parties if users of the Website clicked the "Decline All" button, Defendant immediately caused the installation of cookies from third parties—including Meta Platforms, Inc. (Facebook), Google LLC (DoubleClick and Google), ByteDance Ltd. (TikTok), Adobe, Inc. (dpm.demdex.net), Microsoft Corporation (Microsoft Bing, AppNexus), LiveRamp Holdings, Inc. (Pippio), Taboola.com, Ltd., Salesforce, Inc. (Evergage), PubMatic, Inc., Microsoft Corp. (AppNexus), LinkedIn Corporation (a subsidiary of Microsoft Corp.), X Corp.(Twitter), Dun & Bradstreet Holdings, Inc. (Eyeota),Yahoo, Inc., NextRoll, Inc. (Adroll.com), Magnite, Inc. (Rubicon Project), Index Exchange, Inc. (Casale Media), Bidswitch, Inc., TripleLift, Inc. (3lift.com), Teads Holding Co. (Outbrain) (outbrain.com), and OpenX Technologies, Inc. (collectively, the "Third Parties"). *Id.* ¶ 2. Defendant thereby caused the collection

and dissemination of users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" (collectively "Private Communications"). *Id.* ¶¶ 20, 32. This resulted in the disclosure not only of Website users' computer data such as IP and email addresses but of specific user communications such as search queries and search strings made on the Website. *Id.* ¶¶ 38–41, 135, 141. The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 4, 38–132. This is the exact type of tracking and data sharing that Plaintiff and other Website users sought to avoid by clicking "Decline All" cookies.

### III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

### IV.    ARGUMENT

#### A.    Plaintiff Pleads a Concrete Injury-in-fact.

To have standing under Article III, Plaintiff must allege a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Intangible harms may still be concrete. *See id.* (discussing deprivations of rights as concrete). Examples of concrete but intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion," and such harms have been "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In addition, "state law can create interests that support standing in federal courts." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599 (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)); *see Radek Barnert v. HP, Inc.*, No. 21-cv-05199-SVK, 2021 U.S. Dist. LEXIS 259220, at *18–19 (N.D. Cal.

- 4 -

2021) (van Keulen, J.) ("At the same time, it is well established that the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.")). When a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 924-25 (N.D. Cal. 2023) (collection of users' private browsing data without their consent is sufficient to confer standing); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) ("[V]iolations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact . . . ") (brackets removed).

Here, Plaintiff alleges he suffered actual harm when Defendant caused the Website to place Third Party advertising cookies on Plaintiff's devices, which allowed the Third Parties to collect his Private Communications, *after* Defendant had expressly assured Plaintiff that he could decline such tracking. Compl. ¶¶ 20, 28–30, *see also* ¶ 159 ("Plaintiff and Class members have suffered loss by reason of these violations, including, but not limited to, (i) violation of his and their right to privacy, (ii) loss of value in his and their Private Communications, (iii) damage to and loss of Plaintiff's and Class members' property right to control the dissemination and use of their Private Communications, and (iv) loss of their Private Communications to the Third Parties with no consent."). The Ninth Circuit has recognized that unwanted online data collection and tracking can constitute concrete harm to individuals' interests in controlling their personal information and that affected users have "standing to bring claims for invasion of privacy, intrusion upon seclusion, breach of contract, breach of the implied covenant of good faith and fair dealing, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598–99. Similarly, "legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these *historical privacy rights* when they passed the Wiretap Act, SCA, and CIPA." *Id*. at 599 (emphasis added). Accordingly, control of personally identifiable browsing history, including likes and dislikes, is a "concrete" interest that creates standing for privacy-related claims. *Id.*; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) ("We thus conclude that Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without

- 5 -

consent URLs they had shared in private messages."); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, *tracks* a person's internet browser activity without authorization.").

Defendant argues that Plaintiff has no standing because "website users do not have an expectation of privacy in the type of information at issue here." ECF No. 15 ("Mot.") at 13–14.[2] But that ignores both the allegations and the applicable law. Courts recognize that there is no blanket rule that "there can never be a reasonable expectation of privacy over internet activity." *Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019, at *4–6 (S.D. Cal. May 8, 2024). Indeed, this argument was flatly rejected in *Walsh*, where this Court held that "'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data,' can be quite sensitive; loss in the privacy of such data supports Article III standing." *Walsh*, 2025 U.S. Dist. LEXIS 204652, at *29 (citing *Motorola Mobility LLC,* 2025 U.S. Dist. LEXIS 133836, at *6).

Defendant completely misses what separates this case from the cases it cites: its **own representation** that users could browse the Website without being tracked—i.e., they could "Decline All" cookies.[3] That fact is outcome-determinative since "courts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Thomas,* 2024 U.S. Dist. LEXIS 84019, at *5 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601–03); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1111 (N.D. Cal. 2025) ("*Rodriguez III*") (denying Google's motion for summary judgment because

---

[2] Pincites to documents filed in the ECF system refer to the official electronic page number stamped at the top of the document.

[3] *See*, *e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (data breach case involving alleged failure to safeguard information voluntarily provided by users, but without an allegation that defendant expressly promised not to collect or track such information); *Mitchener v. Curiositystream, Inc.*, No. 25-cv-01471-NW, 2025 U.S. Dist. LEXIS 155489, at *8 (N.D. Cal. Aug. 6, 2025) (alleged privacy violation without any express representation that such information would not be tracked); *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 U.S. Dist. LEXIS 216362, at *2 (S.D. Cal. Nov. 3, 2025) (similar); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102 (C.D. Cal. 2025) (similar).

representing that it would *not* save data and then saving it created a disputed issue of material fact on whether there was a reasonable expectation of privacy); *Brown*, 685 F. Supp. 3d at 937–41 (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun v. Google LLC,* 526 F. Supp. 3d 605, 612 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (finding that it "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data"); *In re Google Inc.*, 806 F.3d 125, 129, 151 (3d Cir. 2015) (holding that users maintained a reasonable expectation of privacy in their browsing histories when Google tracked URLs after the users denied consent for such tracking).

Defendant argues that there is no "privacy right against being *associated with* the kind of information Plaintiff alleges was shared with third parties." Mot. at 14 (citing *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025)). But Defendant misconstrues both Plaintiff's allegations and *Popa*. In *Popa*, the session replay software was limited to collecting data about the use of a single website for the defendant's *own use*. 153 F.4th at 786–87. Here, by contrast, Defendant causes tracking beyond its own website and for the benefit of third parties, who build profiles, as in *In re Facebook*. Also, in *Popa*, the defendant did not seek plaintiff's consent, create an expectation of privacy, and then defy plaintiff's rejection of the software. In *Haleon*, Judge Orrick considered and rejected a similar attempt to invoke *Popa*. 2025 U.S. Dist. LEXIS 169503, at *18–19. There, the court found that the tracking technologies at issue in *Popa* "are . . . distinguishable, both in users' interactions with them and their capabilities" from those at issue here. *Id*. at *20. For example "Popa never purported to have expressly 'reject[ed]' the tracking technology at issue." *Id*. Ultimately, Judge Orrick determined that the plaintiffs "allegations are sufficient to show Article III standing." *Id*. The same is true here.

Next, Defendant argues that Plaintiff's claim of injury to his property rights fails because Plaintiff has not sufficiently alleged how Defendant "caused him to suffer a loss in the value of his information." Mot. at 15. But Defendant's focus on whether Plaintiff suffered a diminution in the value of his information is misguided. Although the diminution in value of personal information can be a cognizable harm, that is not the only or primary type of harm that Plaintiff has alleged; Plaintiff

- 7 -

repeatedly emphasizes that he has suffered a loss of the right to control the dissemination and use of his Private Communications. *See*, *e.g.*, Compl. ¶¶ 157, 191, 211. This is a concrete harm sufficient for standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599 (a plaintiff can be harmed by loss of control over personal information); *Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *15 ("Haleon deprived [Plaintiff] control of personal information regarding his digital activity and profile are enough to show a concrete injury to his right to privacy and, subsequently, Article III standing"). Plaintiff also alleges that Defendant was unjustly enriched by invading Plaintiff's privacy and property rights. *See* Compl. ¶¶ 219–25. This, too, is a cognizable basis for standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599–600 (noting a plaintiff can seek disgorgement of profits from a privacy invasion, and thus has a personal stake in the controversy).

Finally, Defendant argues incorrectly that Plaintiff lacks standing because the alleged injury is not "fairly traceable" to NVIDIA's conduct—contending that NVIDIA's failure to honor Plaintiff's cookie preferences does not match the harm Plaintiff suffered. Mot. at 16. That argument misunderstands both the allegations and basic principles of causation. Third-party advertising cookies exist for one purpose: to track users' online behavior and communications for profiling, analytics, and monetization. Plaintiff expressly declined those cookies because he did not want to be tracked—that is, he wanted his browsing activity to remain private. NVIDIA nevertheless "caused cookies, including the Third Parties' cookies, to be sent to Plaintiff and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with their user data" and that "Defendant chose to install or integrate its Website with resources from Third Parties that, among other things, use cookies." Compl. ¶ 3, 23. By failing to honor Plaintiff's cookie preferences and embedding third-party tracking code it had promised not to install, Defendant directly caused the alleged privacy injury. Further, if Defendant has honored his cookie preferences, no injury would have occurred. That is more than sufficient to establish traceability under Article III.

Defendant's reliance on *Cedar Park Assembly of God of Kirkland v. Kreidler,* 130 F.4th 757, 760 (9th Cir. 2025) is misplaced. That opinion has been withdrawn and "may not be cited as precedent by or to this court or any district court of the Ninth Circuit." *Kirkland v. Kuderer*, 146 F.4th 885, 885 (9th Cir. 2025). In any event, *Cedar Park* has no application here. In that case, the plaintiff's inability to

- 8 -

obtain an insurance plan without abortion coverage was not caused by the statute at issue because insurers were still legally allowed to offer plans without abortion coverage to conscientious objectors; a particular insurer's decision not to offer such a plan was not a result of the law itself. 130 F.4th at 764–66. Here, by contrast, Plaintiff alleges that his privacy injury flows directly from Defendant's own conduct.

### B.    Plaintiff's Allegations Satisfy Rule 9(b).

Rule 9(b) applies to fraud-based claims. But it does not extend to Plaintiff's statutory claims or privacy claims, which have no element of fraud or deception. Courts, in fact, reject the notion. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) (finding Rule 9(b) to be inapplicable to wiretapping claims since "Plaintiffs' statutory claims here do not sound in fraud.").

In any event, Plaintiff's allegations satisfy Rule 9(b). The analysis here is straight-forward. Rule 9(b) requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022). In the Complaint, Plaintiff alleges that Defendant (the who), fraudulently stated that users could "Decline All" cookies (the what), during the class period (when), on the Website (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *E.g.*, Compl. ¶¶ 1–3, 27, 30–32, 133–142 (alleging fraud); ¶¶ 16–20, 23–24 (alleging intentional conduct); ¶¶ 139 (alleging reliance); ¶¶ 142–143 (alleging injury). Plaintiff further alleges that the statement that he could "Decline All" cookies was false and misleading because Defendant had in fact already permitted the Third Parties to place cookies on Plaintiff's browsers and continued to do so even after Plaintiff clicked "Decline. All" *Id.* ¶ 140. Plaintiff further alleges that Defendant acted intentionally and with knowledge (*id*. ¶¶ 16–20, 23–24), Plaintiff relied on the misrepresentations to his detriment (*id*. ¶¶ 139), and was injured as a result (*id*. ¶¶ 142–143).

In *Motorola*, the court found substantially similar allegations of fraud sufficient to satisfy Rule 9(b). 2025 U.S. Dist. LEXIS 133836, at *36–37 ("The complaint states that the "who" is Motorola; the "what" are misrepresentations by Motorola through the popup banner offering users the option to "Reject All non-essential cookies;" the "when" is the multiple occasions that Gabrielli visited Motorola's website

- 9 -

between February 2022 and January 2024; the "where" is on Motorola's website; and the "how" is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the "who, what, when, and where" of Rule 9(b)" (citations omitted)); *see also Walsh*, 2025 U.S. Dist. LEXIS 204652, at *57 (holding that the plaintiff's allegations satisfied Rule 9(b) when they made substantially identical allegations but dismissing the fraud claim on other grounds).

Defendant argues that further specificity is required as to the precise timing of Plaintiff's visits to the Website, but the allegations here plainly "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown*, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)); *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *37 (allegations of website visits over a two-year period were sufficient). That is sufficient.

Defendant's reliance on *De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583, at *10-11 (N.D. Cal. Dec. 22, 2025) is misplaced. In *De Ayora*, the alleged misconduct spanned four years across multiple websites, and defendants represented that cookie banners were implemented and updated at different times on different sites. *Id.* That concern is absent here. Plaintiff identifies the banner he encountered on a single website. Compl. ¶ 27. Defendant therefore has clear notice of the operative "where" and "when" of the alleged misrepresentation because it knows the banner that Plaintiff alleges he saw and when it was on the website.[4]

Defendant's recitation of Rule 9(b)'s purposes in fact confirms that the rule is satisfied here. Plaintiff has provided adequate notice of the alleged misconduct, identified the specific representations at issue, and grounded his claims in concrete factual allegations rather than speculation. That is precisely what Rule 9(b) requires. The additional timestamp-level detail Defendant seeks is a matter for discovery, not pleading.

---

[4] Defendant argues in its motion to compel arbitration that it has since changed its banner and speculates that Plaintiff may have visited the banner afterward, this is a factual argument unsuitable for consideration on a motion to dismiss. By providing the specific banner he saw, Defendant knows when that banner was visible on the website and when Plaintiff would have seen the website.

PL.'S OPP. TO DEF'S MOT. TO DISMISS – CASE NO. 5:25-CV-09160-SVK

**C.    Defendant's 12(b)(6) Arguments Fail.**

**1.    Plaintiff Alleges That Defendant's Invasion of Privacy Was Highly Offensive. (Claims 1 and 2)**

Defendant's collection and disclosure of data after promising visitors it would not do so is highly offensive. *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) ("*Rodriguez I*") (denying motion to dismiss claims for intrusion upon seclusion and invasion of privacy where plaintiffs alleged that "Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries . . .'").

Ignoring its own representations, Defendant asserts that "there is no reasonable expectation of privacy in any" of the information it may have collected and that "collecting such information is not 'highly offensive.'" Mot. at 20–21. This is unpersuasive. An intrusion may be "highly offensive" where it defeats an express privacy choice and undermines a clear promise. *See Walsh,* 2025 U.S. Dist. LEXIS 204652, at *39 ("In this District, courts 'have held that deceit can be a kind of 'plus' factor that is significant in making a privacy intrusion especially offensive.'") (quoting *In re Google Location History Litig.*, 514 F. Supp. 3d at 1157). Telling consumers that they will not be tracked, then tracking them anyway, is precisely the type of conduct a reasonable jury could find highly offensive. *See Brown*, 685 F. Supp. 3d at 937–42 (denying summary judgment, finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode, and holding that there was a triable issue as to whether defendant's intrusion was highly offensive). Courts consistently, recognize that the tracking and amassing of online data without consent is highly offensive. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *Rodriguez I*, 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy).

- 11 -

Defendant's cases do not hold otherwise. None of the cases involve circumstances where a defendant offered to protect information to lure someone to use a website and then violated that promise when it intercepted IP addresses, URLs, user identifiers, browsing history, and user input data to allow the aggregation of data to create user profiles. [5] For example, in *United States v. Forrester*, 512 F.3d 500, 503 & n.6 (9th Cir. 2008), the Ninth Circuit concluded that the government did not violate the Fourth Amendment rights of a person when using a pen register for internet surveillance to capture "the to/from addresses of his e mail messages, the Internet protocol ('IP') addresses of the websites that he visited and the total volume of information transmitted to or from his account." But the government did not promise it would not use technological surveillance to lure the defendant to use this device, and then execute a pen register.

In any event, the question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also In re Facebook, Inc., Internet Tracking Litig*., 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

---

[5] Indeed*, Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. July 18, 2022) cited by Defendant emphasizes that "conduct is more likely to be 'highly offensive' where the defendant 'surreptitious[ly]' collects sensitive information even while the plaintiff has logged off and is not even using the defendant's services." Further, Defendant relies on long-outdated cases, including *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014), overruled by more recent cases, such as *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 602–03 (discussed *supra*).

PL.'S OPP. TO DEF'S MOT. TO DISMISS – CASE NO. 5:25-CV-09160-SVK

## 2. Plaintiff Adequately Alleges Wiretapping. (Claim 3)

### a. Plaintiff alleges "contents" were intercepted.

CIPA prohibits interception of the "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). Here, Plaintiff alleges interception of "contents," including user input data. *See* Compl. ¶ 187 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data"); *id.* ¶ 20 ("user input data" includes "search queries, the user's name, age, gender, email address, location, and/or payment information").

Even the cases Defendant cites do not support dismissal. Mot. at 22. In *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024), the plaintiffs alleged only that record information was captured, such as "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, [and] network requests." On the other hand, in *Katz-Lacabe*, the court denied the motion to dismiss, finding that plaintiff adequately pled "contents" because they alleged URLs and data entered into forms were intercepted. 668 F. Supp. 3d at 944–945. Here, Plaintiff allegations are more akin to *Katz-Lacabe* because he alleges browsing history, website interactions, and user input data such as search strings were intercepted. Those searches constitute "contents" of information. *Heerde v. Learfield Commc'ns, LLC,* 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also In re Zynga Priv. Litig.*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *11 (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

- 13 -

In *Walsh*, this Court held that the plaintiffs had not adequately alleged interception of "contents" but otherwise found that the plaintiffs had pleaded a wiretapping claim. 2025 U.S. Dist. LEXIS 204652, at *47. The Court recognized "user input data," including search terms, may constitute actionable "contents." *Id.* at *44. However, it held that plaintiffs did not allege that the named plaintiff actually generated such data or that any such data was read or communicated to third parties. *Id*. Here, unlike in *Walsh*, Plaintiff alleges that he used Defendant's Website search functionality and entered information into interactive fields including Defendant's search bar (Compl. ¶ 135), and that the integrated third-party tracking resources captured and transmitted his user input data in real time (*id.* ¶ 141). The specificity of Plaintiff's allegations distinguishes this case from *Walsh*.

### b.  Plaintiff alleges information was intercepted while in transit.

For Plaintiff's eavesdropping claim, "the interception must occur contemporaneous with the sending or receipt of the message." *See Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Plaintiff clearly alleges that timing element. Compl. ¶¶ 3 (the cookies "permitted the Third Parties to track and collect data in real time"), 30 (the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications"), 34 (interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains), 141 ("Defendant permitted the Third Parties to track and collect Plaintiff's Private Communications as Plaintiff browsed the Website"), 186 (third parties "read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while the electronic communications were in transit"). Plaintiff further identifies specific examples of cookies transmitting data in *real time*. Compl. ¶¶ 38–126. Allegations describing the real-time transmission of communications is sufficient on a motion to dismiss. *See Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) ("allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least 'read' or 'learned' the information so transmitted. Because that is sufficient to state a claim under Section 631, LinkedIn's motion to dismiss Jackson's CIPA claim is denied.").

In particular, the use of computer code to simultaneously duplicate and intercept communications satisfies CIPA's "in transit" element: "allegations that [communications] are intercepted in real time

- 14 -

through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.,* No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. Plaintiff has alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela*, 674 F. Supp. 3d at 759; *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiff has sufficiently alleged that his communications were intercepted, tapped, read, and processed "in transit" to sustain their CIPA claims. *St. Aubin*, U.S. Dist. LEXIS 179067, at *17. Defendant's contention that "Plaintiff fails to allege that anyone attempted to read or learn the contents of while they were 'in transit'" must be rejected. Mot. at 22.

Furthermore, "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Penal Code § 631(a) and *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701, at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis.").

Defendant's citation to *In re Vizio, Inc., Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017*)* is inapposite because the complaints in that case did not include *any* factual allegations supporting an inference that the plaintiffs' communications were intercepted in transit. Here, by contrast, Plaintiff has supported his allegations that the interceptions occurred in real time, during transmission, with specific details and examples, which is more than sufficient at the pleading stage.

- 15 -

### c. Plaintiff alleges "aiding" under CIPA.

Defendant next argues that Plaintiff "fails to allege that NVIDIA aided and abetted a wiretap." Mot. at 22–23. Defendant argues Plaintiff has insufficiently pleaded that NVIDIA had "knowledge of conduct" and "a purpose of aiding . . . third parties to commit those acts." *Id.* In other words, that Plaintiff has not sufficiently pleaded intent. Not so. Plaintiff alleges that "Defendant voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" which was "done so pursuant to agreements between Defendant and [the] Third Parties" resulted in the collection of valuable user data. Compl. ¶¶ 16, 38–132. These allegations are sufficient to allege intent.

For example, in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 945–46 (N.D. Cal. 2023), the plaintiff brought CIPA claims under Section 631 against Disney for causing a third-party to intercept user data including "search terms entered," "pages viewed," and other data similar to the allegations here. The court held that plaintiff adequately pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id.* at 954. So too here. *See also Walsh*, 2025 U.S. Dist. LEXIS 204652, at *46 (applying *James* and holding that substantially similar allegations were sufficient so "that the Court can reasonably infer from Plaintiffs' allegations that Dollar Tree entered into agreements with the identified third parties to place cookies on the devices of consumers who visit Dollar Tree's website").

The decision in *James* is consistent with other recent decisions from this Circuit holding that intent under CIPA is satisfied by pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of whether Defendant specifically intended to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

- 16 -

Defendant's reliance on *Smith v. Yeti Coolers, LLC,* 754 F. Supp. 3d 933, 938 (N.D. Cal. 2024) is misplaced. Mot. at 22–23. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. *Id.* The *Yeti* court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at 942. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its website. Here, Plaintiff has alleged that Defendant integrated the third-party resources on the Website, which placed and transmitted cookies *in order* to obtain user data for advertising purposes. Compl. ¶¶ 16, 20–23, 38–126. Defendant cannot plausibly claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users' Private Communications; it integrated the Third Party code into its Website to do exactly that.

### 3. Plaintiff Adequately Pleads a Violation of Section 638.5. (Claim 4)

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiff adequately pleads each element of this claim. Plaintiff alleges that the Third Party cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because it records users' IP address and user-agent information, which is "routing, addressing, or signaling information." Compl. ¶ 199.

Defendant argues Plaintiff cannot state a claim under CIPA § 638.51 because it does not apply to the collection of IP addresses. Mot. at 24. However, Defendant's argument contradicts the plain text of the statute, which is deliberately expansive. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("[T]he Court cannot ignore the expansive language in the California Legislature's chosen definition."). Section 638.51 does not limit its reach to "telephone" communications. To the

- 17 -

contrary, the Legislature adopted language covering the use of a pen register or trap and trace device in connection with an "electronic communication." Courts in this District have repeatedly rejected Defendant's argument as contrary to the statute's plain language. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024). This is because "the California Legislature's chosen definition" of a pen register is "specific as to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiff alleges here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 754 F. Supp. 3d 924, 929. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Defendant's assertion that applying § 638.51 to IP-address collection would render ordinary website operations unlawful ignores the statute's express carve-out. As this Court recognized in *Walsh*, when ruling on this same issue, Section 638.50(b) excludes devices or processes used for communications services provided by such provider . . . or other similar purposes in the ordinary course of business." 2025 U.S. Dist. LEXIS 204652, at *49. Thus, essential first-party cookies that record routing or addressing information solely to enable the website to function fall within that carve-out and may be lawful. *Id.* By contrast, third-party trackers that record the same addressing information for independent profiling, marketing, or commercial exploitation fall outside the carve-out and are unlawful pen register absent a court order or valid consent. *Id.* The statute therefore does not threaten the basic

functioning of the Internet; it regulates the use of routing and addressing information beyond what is necessary to provide the requested communication.

Defendant's consent argument fails for the same reason. While users may understand that a website must process certain technical information, such as an IP address, to deliver content, that understanding extends only to essential, first-party functionality falling within the statute's ordinary-course carve-out. It does not constitute consent to the installation and use of third-party analytics or advertising trackers that record addressing information for separate commercial purposes. Plaintiff expressly did not consent to those non-essential tracking mechanisms, and generalized awareness that websites log IP addresses cannot be transmuted into consent for distinct, unlawful pen register activity.

Defendant's reliance on *Malibu Media LLC v. Pontello*, No. 13-12197, 2013 WL 12190709, at *4 (E.D. Mich. Nov. 19, 2013), is misplaced. That case applied the federal Pen Register Act—not CIPA—and involved a plaintiff who merely recorded IP addresses that were transmitted as part of a direct, voluntary communication to the investigator itself, transmission falling within the ordinary course of providing the communication; here, by contrast, Defendant embedded third-party tracking code that caused routing information to be transmitted to Third Parties, transmissions that were not required to effectuate Plaintiff's communication with Defendant's Website.

### 4. Plaintiff Adequately Pleads Damages, Intent, and Knowledge of Falsity. (Claim 5)

As explained *supra*, Plaintiff has pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. He alleges that Defendant (who), allowed the Third Parties to collect Website users' Private Communications despite promising they could "Decline All" cookies (what), when users visited Defendant's Website and viewed the Cookie banner (when and where), and by integrating its Website with Third Party resources, including cookies (how). *See, e.g.*, Compl. ¶¶ 1–3, 27, 30–32, 133–142 (alleging fraud); ¶¶ 16–20, 23–24 (alleging intentional conduct); ¶¶ 139 (alleging reliance); ¶¶ 142–143 (alleging injury). This is clearly sufficient.

Defendant claims that Plaintiff "fails to allege facts showing NVIDIA knew it was making a false statement." Mot. at 27. But Plaintiff has done exactly that. Plaintiff alleged that Defendant "controls the software code of its Website," including its cookie banner, and indeed has "control over whether

- 19 -

[cookies] are placed on its user's devices" in the first place." *Id.* ¶ 23. Moreover, Plaintiff explicitly pled that Defendant "caused . . . tracking cookies to be placed on Website users' browsers and devices" even for those users who elected to reject all cookies." *Id.* ¶ 31. Plaintiff further alleges that Defendant "knew or, should have known, how the Websites functioned" which included the "third-party cookies in use on the Website," and knew or should have known that "the Website's programing allowed the third-party cookies to be placed on users'—including Plaintiff's—browsers and devices" and "transmitted to the Third Parties along with users' Private Communications after users attempted to 'Decline All' cookies" through "testing the Website [and] evaluating its performance metrics by means of its accounts with the Third Parties." *Id.* ¶ 208. Indeed, the Complaint alleges that Defendant had a strong incentive to wrongfully amass and transmit data from users: it is highly valuable and provides commercial insight into its consumer base. *Id.* ¶¶ 127–132. It is well-established that "intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Intent may be inferred from these allegations.

Finally, Defendant argues that Plaintiff fails to allege actual damages for his fraud claim. Mot. at 28. Not so. For the tort of deceit, Plaintiff is not limited to out-of-pocket expenses but may seek compensatory damages for any type of harm, as well as punitive damages. *See In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1135 (N.D. Cal. 2018) (holding "the appropriate measure of damages is defined by Civil Code sections 1709 and 3333," which provide broad relief for any harm). California Civil Code § 1709 permits recovery of "any damage which [the plaintiff] thereby suffers." California Civil Code § 3333 instructs that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Here, Plaintiff alleges that he was fraudulently induced to use Defendant's website and to disclose valuable personal information based on Defendant's representation that he would not be tracked. Compl. ¶ 139. As a result, Defendant collected and transmitted Plaintiff's information for commercial purposes, depriving Plaintiff of control of that valuable and private data and causing him to expend time and effort in reliance on Defendant's misrepresentation. *Id.* ¶ 127–132, 213. Had Plaintiff known the

truth, "he would not have used the Website or, at a minimum, he would have interacted with the website differently." *Id.* ¶ 142. Those allegations are sufficient at the pleading stage to establish actual damages.

Defendant's reliance on *Hubbard v. Google*, No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588 (N.D. Cal. Jan. 13, 2025) is misplaced. There, the plaintiff "confirm[ed] that the sole loss they allege stems from the diminution in value of their information." Here, Plaintiff has identified several theories of recovery. *See Rodriguez v. Google LLC,* No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at \*35 (N.D. Cal. Jan. 3, 2024) ("*Rodriguez II*") (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection."); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing"); *id.* at 599 (a plaintiff can be harmed by loss of control over personal information).

### 5. Plaintiff's Unjust Enrichment Claim Is Adequately Pled in the Alternative of His Legal Claims. (Claim 6)

Defendant contends that under California law, there is not a standalone cause of action for unjust enrichment. Mot. at 15. Not so. The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiff may bring an unjust enrichment claim because he alleges that Defendant benefited from using his Private Communications at his expense. Compl. ¶ 219. If Plaintiff is unable to pursue his other claims, he will have no adequate remedy at law. *Id.* ¶ 226. "This is sufficient at the pleading stage to invoke the alternative pleading permissions of Rule 8." *Walsh*, 2025 U.S. Dist. LEXIS 204652, at \*55; *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051 (N.D. Cal. 2025) (refusing to dismiss unjust enrichment claims in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at \*4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegation that

- 21 -

defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

### D.    Leave to Amend Should Be Granted.

Plaintiff respectfully requests leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: February 20, 2026

Respectfully submitted,

*/s/ Rajiv V. Thairani*
**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
  rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*