ALI ABUGHEIDA (STATE BAR NO. 285284)
aabugheida@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

BETTY KIM (STATE BAR NO. 341060)
betty.kim@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071-1596
Telephone: +213 612 2109
Facsimile: +213 612 2499

Attorneys for Defendant
NVIDIA Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STACY PENNING, an individual, on behalf of himself, the general public, and those similarly situated,

Plaintiff,

v.

NVIDIA CORPORATION,

Defendant.

Case No. 5:25-CV-09160-SVK

**NVIDIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Courtroom: 6, 4th Floor
Judge: Hon. Susan van Keulen

Complaint Filed: October 24, 2025

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. NVIDIA ESTABLISHED THE EXISTENCE OF A VALID ARBITRATION AGREEMENT. ..... 2

A. The Record Demonstrates That Plaintiff Visited The Website After February 27, 2025. ..... 2

B. Website Cookie Banners After February 27, 2025 Provided Conspicuous Notice Of The Terms Of Service, Sufficient To Create A Binding Contract. ..... 6

III. PLAINTIFF DOES NOT DISPUTE THAT HIS CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT, THAT A STAY IS WARRANTED IF THE MOTION IS GRANTED, AND THAT LIMITED DISCOVERY IS WARRANTED IF THE MOTION IS DENIED. ..... 13

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Barrales, et al. v. Reckitt Benckiser LLC*, No. 5:25-cv-10643 (N.D. Cal. Dec. 12, 2025) .......... 12, 13

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... 8, 9

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) .......... 7, 10, 11

*Dawson v. Target Corp.*, 2025 WL 1651940 (N.D. Cal. June 11, 2025) .......... 8, 9

*De Ridder v. Roblox Corp.*, 2025 U.S. Dist. LEXIS 256455 (N.D. Cal. Oct. 31, 2025) .......... 13

*Gonzales v. Charter Commc'ns, LLC*, 497 F. Supp. 3d 844 (C.D. Cal. 2020) .......... 4

*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023) .......... 2

*L'Occitane, Inc. v. Zimmerman Reed LLP*, 2024 WL 2227182 (C.D. Cal. Apr. 12, 2024) .......... 4

*L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 7, 8, 11, 12

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 7, 8, 11, 12

*Lansdown v. Bayview Loan Servicing, LLC*, 2023 WL 2934932 (N.D. Cal. Apr. 12, 2023) .......... 5, 14

*Nieves, et al. v. Microsoft Corp.*, No. 3:25-cv-10557 (N.D. Cal. Dec. 9, 2025) .......... 13

*Nungaray v. Pleasant Valley Lima Bean Growers & Warehouse Ass'n*, 142 Cal. App. 2d 653 (1956) .......... 4, 5

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) .......... 6, 7

*Ostini, et al. v. IGN Entertainment, Inc.*, No. 5:26-cv-01375 (N.D. Cal. Feb. 16, 2026) .......... 13

*Penning v. Insurancezebra, Inc.*,
No. 3:25-cv-03531-LJC (N.D. Cal. Apr. 22, 2025) ....13

*Penning v. Newsmax Media, Inc.*,
No. 4:26-cv-01059-JST (N.D. Cal. Feb. 3, 2026).... 12, 13

*Porter v. McGrath*,
2006 WL 734944 (E.D. Cal. Mar. 23, 2006) .... 3

*Ramirez v. Ghilotti Bros. Inc.*,
941 F. Supp. 2d 1197 (N.D. Cal. 2013) .... 5, 14

*Sanchez v. Monumental Life Ins. Co.*,
102 F.3d 398 (9th Cir. 1996).... 3

*Sandoval v. Cnty. of Riverside*,
2023 WL 3821806 (C.D. Cal. June 2, 2023) .... 14

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023).... 9, 10

*In re Stubhub Refund Litig.*,
2023 WL 5092759 (9th Cir. Aug. 9, 2023).... 9, 10

*Timothee, et al. v. Meta Platforms, Inc., et al*,
No. 3:25-cv-05106 (N.D. Cal. June 17, 2025).... 13

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002).... 4

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) .... 13

*United States v. Schaff*,
948 F.2d 501 (9th Cir. 1991).... 4, 5

## I. INTRODUCTION

NVIDIA's Motion established by a preponderance of the evidence that (1) Plaintiff visited NVIDIA's Website on or after February 27, 2025, (2) the cookie banners presented after that date clearly and conspicuously explained that by interacting with the banner (or using the site) visitors consented to NVIDIA's Terms of Service, which include a binding Arbitration Agreement, (3) Plaintiff interacted with the banner, and (4) Plaintiff's claims fall within the scope of the Arbitration Agreement. Plaintiff does not offer any evidence to the contrary. Instead, he attempts to obfuscate the facts that are uniquely in his possession, hoping to avoid the arbitration agreement he entered into. That is not enough; this case must be decided by an arbitrator.

*First*, Plaintiff refuses to say (let alone provide evidence of) when he visited the Website, but nonetheless questions NVIDIA's showing that the visit was on or after February 27, 2025. As NVIDIA's Motion and evidence established, the only way Plaintiff could have interacted with NVIDIA's Website in the way he claims in his Complaint is if he visited the Website on or after February 27, 2025, clicked on NVIDIA's cookie banner, and "accept[ed] [the Website's] Terms of Service," including the Arbitration Agreement therein. NVIDIA did so through the unrebutted declaration of William Lee. ECF No. 14-1 ("Lee Decl.") ¶¶ 5, 6, 10. NVIDIA also provided Plaintiff's own unrebutted statement that he visited Website "in or around July 18, 2025." ECF No. 14-2 ("Abugheida Decl.") Ex. A.

Plaintiff introduces no evidence to rebut NVIDIA's. Plaintiff does not even deny accessing the Website after February 27, 2025. Nor does he specify any alternative date(s) on which he visited the Website. Instead, he attempts to muddy the waters, by insisting that NVIDIA cannot know (because Plaintiff will not say) which parts of the Complaint describe his visit, and which parts are "examples" of what other unidentified users may have seen. But again, Plaintiff provides no proof. The relevant standard of proof is a preponderance of the evidence, and Plaintiff has offered nothing on his side of the balance.

*Second*, Plaintiff argues that the cookie banner did not provide adequate notice of the Website's Terms. But courts have found similar cookie banners provide sufficient notice. And none of the cases Plaintiff cites support a different conclusion. NVIDIA's banners were presented in an

easy-to-read format with a highly contrasting black background, white and capitalized text, and green underlined hyperlinks. Plaintiff similarly offers no explanation for how he could have failed to notice the green underlined Terms of Service reference on the cookie banner when his very theory of this case is that he read, interacted with, and was misled by the cookie banner.

*Third*, Plaintiff argues that the Court cannot grant NVIDIA's Motion because NVIDIA inadvertently omitted a copy of its Website's publicly available Terms of Service from its initial filings. This argument has no merit. Not only is it undisputed that Plaintiff's counsel, in fact, had a copy of the Terms of Service, but the Terms of Service were publicly available on NVIDIA's website and courts routinely grant motions to compel arbitration based on publicly available arbitration provisions, even when they are not attached to the motions themselves. Moreover, NVIDIA promptly provided a supplemental copy upon noticing the error and offered Plaintiff time to review and modify the briefing schedule, which Plaintiff never responded to.

*Finally*, Plaintiff does not dispute that if he did agree to the Website's Terms of Service, then this claim falls within the scope of the arbitration provision. He likewise does not dispute that if this Court grants NVIDIA's Motion, it should stay this case pending completion of the arbitration. And he does not dispute that if the Court believes that NVIDIA has not yet carried its burden with respect to this Motion, that it should be granted the limited discovery that it requested in its opening brief (specifically into when, exactly, Plaintiff and his counsel visited the Website).

The Motion should be granted in its entirety.

## II. NVIDIA ESTABLISHED THE EXISTENCE OF A VALID ARBITRATION AGREEMENT.[1]

### A. The Record Demonstrates That Plaintiff Visited The Website After February 27, 2025.

"As the party seeking to compel arbitration, [NVIDIA] bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). Thus, NVIDIA must show that it is "more likely than not"

[1] While the Opposition argues that California law applies, Plaintiff does not dispute that contract formation standards are materially identical under California and Delaware law. Opp. 3-4. Plaintiff does not dispute that the Federal Arbitration Act ("FAA") governs NVIDIA's Arbitration Agreement.

that an arbitration agreement exists between NVIDIA and Plaintiff. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). To assess that showing, the Court need only compare NVIDIA's evidence to that of the Plaintiff. *Porter v. McGrath*, 2006 WL 734944, at *20 (E.D. Cal. Mar. 23, 2006) ("Preponderance of the evidence means evidence that has more convincing force than that opposed to it.").

NVIDIA has met that burden. NVIDIA has provided evidence showing that it is (at least) more likely than not that Plaintiff visited the Website on or after February 27, 2025 and interacted with a cookie banner that clearly and unambiguously required Plaintiff's assent to NVIDIA's Terms of Service, which included an arbitration agreement. ***First***, the Complaint alleges that Plaintiff "input[ted] . . . information into" a search bar on the Website and includes a screenshot of the search bar with which Plaintiff supposedly interacted. Compl. ¶¶ 38–39. NVIDIA's unrebutted sworn testimony demonstrates that the search bar depicted in Plaintiff's Complaint "was not made available to California-based visitors before" February 27, 2025. Lee Decl. ¶ 5. Accordingly, the only way that Plaintiff could have interacted with the search bar that he references in his Complaint is if he visited the Website on or after February 27, 2025. ***Second***, prior to filing the Complaint, Plaintiff's counsel transmitted to NVIDIA's counsel a courtesy copy of the same, which contained an express assertion (which Plaintiff surreptitiously omitted from the filed version) that Plaintiff visited the Website "<u>**in or around July 18, 2025**</u>." (Abugheida Decl. Ex. A ¶ 133 [emphasis added].)

Plaintiff responds to NVIDIA's first piece of evidence with obfuscation; and to NVIDIA's second piece of evidence not at all, even though Plaintiff knows when he visited the Website. If Plaintiff's visit was before February 27, 2025, all he had to do is submit a declaration to state the date of his visit. He didn't. Instead, he makes nonsensical arguments about how NVIDIA must be "speculating" about when Plaintiff visited the Website. Plaintiff's refusal to provide a straightforward factual response is telling; his tactical ambiguity alone should be construed as an admission that his visit occurred after February 27, 2025.

Similarly, Plaintiff does not say whether he interacted with the search bar depicted in his Complaint, but argues that the screenshot might not have been "captured by Plaintiff," and "is an

example of a search bar on the Website." ECF No. 28 ("Opp.") 6, n.1. But Plaintiff's argument is refuted by his own Complaint, which does not state that the screenshot at issue was merely an "example." To the contrary, the Complaint provides "screenshots of the search bar on the Website where users can type into the search bar to cause the Website to search its contents," and alleges that "[w]hen ***Plaintiff*** and other Website users input the information into the search bar, they are intending to communicate with the Website the contents of the search to receive the information they are interested in." Compl. ¶¶ 38–39, 135 (emphasis added). Moreover, Plaintiff fails to explain why he would have included in his Complaint a screenshot of a search bar that he did not use, particularly because Plaintiff is in the best position to state plainly whether it was him or someone else who captured the screenshot. He does not. *Nungaray v. Pleasant Valley Lima Bean Growers & Warehouse Ass'n*, 142 Cal. App. 2d 653, 666, (1956) ("The failure to deny the truth of a statement may constitute an admission by silence."); *United States v. Schaff*, 948 F.2d 501, 505 (9th Cir. 1991) ("Silence in response to the statement of another is an adoptive admission" if, "under the circumstances, an innocent [party] normally would respond to the statement.").

Plaintiff argues that it is enough that in his Complaint, he "includes screenshots of the pop-up cookie consent banner and ensuing 'Cookie Settings' window that he saw when he visited Defendant's website." Opp. at 5. But to defeat a motion to compel arbitration, Plaintiff must provide credible evidence, not allegations, in response to NVIDIA's evidence. *L'Occitane, Inc. v. Zimmerman Reed LLP*, 2024 WL 2227182, at *4 (C.D. Cal. Apr. 12, 2024) (explaining that a "Complaint's allegations are insufficient" to carry the "evidentiary burden" necessary to meet the "preponderance of the evidence standard" on a motion to compel arbitration); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) ("[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests[.]"); *Gonzales v. Charter Commc'ns, LLC*, 497 F. Supp. 3d 844, 851 (C.D. Cal. 2020) ("[A] party opposing the [motion to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense . . . .") (citation omitted). Here, Plaintiff offers no evidence at all. Plaintiff's reliance on his allegations is particularly ineffective here, because he now claims that some of the screenshots

in his Complaint are mere "example[s]" of what other users might have seen on the Website and not based on his own experience. Opp. 6, n.1.

Plaintiff then makes a different argument: that even "if [he] visited the Website in 2025," he still may not have seen the cookie banner because "websites ***typically*** do not display cookie banners to users who have previously set their cookie preferences." Opp. 6 (emphasis added). But Plaintiff does not even try to show that was true of NVIDIA's Website or his actual experience. The sole source he cites on this point is a website blog that (as illustrated in its name) deals solely with EU law, not California law and is written by a self-described "marketing expert." Jeffrey Edwards, *GDPR Cookie Compliance 101: How to Manage EU Users' Consent*, CHEQ (Jan. 18, 2023), https://cheq.ai/blog/gdpr-cookie-compliance-101. This hearsay blog is not evidence of anything, let alone Plaintiff's experience with NVIDIA's Website; what other websites "typically" do in some unspecified circumstances is irrelevant.

As to Plaintiff's own admission that he accessed the Website in July 2025, his Opposition offers no response at all. Plaintiff does not deny the authenticity, existence, or accuracy of that allegation, which is tantamount to an admission. *Nungaray*, 142 Cal. App. 2d at 666 ("The failure to deny the truth of a statement may constitute an admission by silence."); *Schaff*, 948 F.2d at 505. Nor does he explain why the date of his visit to the Website was omitted from the filed copy of the Complaint. Indeed, Plaintiff fails to address this argument at all, and hence "waive[s] or abandon[s]" any opposition to it. *Lansdown v. Bayview Loan Servicing, LLC*, No. 22-CV-00763-TSH, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023); *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210, n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it).

The evidence NVIDIA provided—including Plaintiff's own statement—shows that it is more likely than not that Plaintiff accessed the Website after February 27, 2025. Lee Decl. ¶ 5. And Plaintiff has submitted no evidence to the contrary.

### B. Website Cookie Banners After February 27, 2025 Provided Conspicuous Notice Of The Terms Of Service, Sufficient To Create A Binding Contract.

To show that its cookie banner created a binding agreement to arbitrate, NVIDIA must establish that its Website's banner provided "reasonably conspicuous notice" of the Terms of Service, and provided clear direction on how a user could "unambiguous[ly] manifest[] . . . assent" to those terms. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023). NVIDIA did exactly that, by providing undisputed evidence the cookie banners in effect on NVIDIA's Website after February 27, 2025 (**Figure 1** below), (i) appeared as a persistent pop-up displayed across the bottom of the Website's white background on a contrasting black banner; (ii) capitalized, hyperlinked, and underlined "Terms of Service" in contrasting green font; and (iii) stated explicitly that by clicking any of the buttons, or, in the July 2025 version, by otherwise continuing to use the Website, the visitor "accept[s] our Terms of Service (which contains important waivers)." Mot. 3-4; Lee Decl. ¶¶ 6, 10.




**Figure 1.** NVIDIA Cookie Banner[2]
Lee Decl. ¶ 10.

---

[2] As explained in NVIDIA's Motion, two slightly different version of the cookie banner were in effect after February 27, 2025. Mot. 2-3. Because Plaintiff does not argue that the differences between those two versions are material for this analysis, this brief focuses on the version that has been in effect since July 2025, when Plaintiff claimed to have visited the Website in the service copy of his Complaint. But the analysis applies equally to both versions of the banner.

When evaluating the adequacy of notice, courts "consider the totality of the circumstances." *Oberstein*, 60 F.4th at 514. The purpose of this inquiry is not to micromanage every aspect of a website's design, but to ensure that "a reasonably prudent user would have inquiry notice" of the website's terms of use. *Id.* at 515; *see also Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (courts may look to the "context of the transaction" and "overall screen design"); *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *9 (N.D. Cal. Oct. 10, 2025) (explaining that "underlined text" is "sufficient" to identify a hyperlink when viewed in the context of the "overall design"); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025). Instead of analyzing the overall design of NVIDIA's cookie banner, Plaintiff responds by criticizing discreet aspects of the "Terms of Service" hyperlink, without acknowledging the "totality of circumstances." Opp. 7-8. Specifically, Plaintiff complains that the link: (1) was in the same font color as the surrounding text rather than in a contrasting color (but ignores that the link was underlined by a contrasting green line); (2) was smaller than the bolded text inside the action buttons (but ignores that the hyperlinked terms were in the same size font as the banner text); (3) was neither bolded nor in all-capital letters (but ignores that "Terms of Service" in the banner was capitalized and underlined); and (4) appeared toward the end of a paragraph about cookies (but ignores the proximity of the hyperlinked Terms of Service to the actions buttons below). Opp. 7–8.

Here, the totality of the circumstances establishes that a reasonably prudent user would have notice because (1) the Terms of Service hyperlink appears above the action buttons, (2) the phrase Terms of Service is underlined in a contrasting green font, (3) the phrase Terms of Service is identified as a proper noun with a capital "T" and "S," (4) the banner itself is set apart from the Website as a whole with a black background and highly contrasting white text, and (5) the banner clearly informs visitors that by "clicking one of the buttons," or by "continuing to use this site" (in the July 2025 version), they "accept the Terms of Service (which contain important waivers)."

Courts have found banners that are less conspicuous than NVIDIA's to provide adequate notice. For example, compare NVIDIA's banner (**Figure 1**) to Ubisoft's banner (**Figure 2**) and LinkedIn's banner (**Figure 3**), which were found to create binding and enforceable contracts.




**Figure 2.** Ubisoft Cookie Banner
*Lakes v. Ubisoft, Inc.*, No. 3:24-cv-06973, ECF No. 22-2, *cited at* 777 F. Supp. 3d at 1051




**Figure 3.** Spring Fertility Cookie Banner
*L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *8

By contrast, NVIDIA's banner looks nothing like the sign-up or registration screens at issue in the cases Plaintiff cites (Opp. 7-8). Fluent Inc.'s rewards sign-up page used "a font so small that it is barely legible to the naked eye." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–57 (9th Cir. 2022) (**Figure 4**). Similarly, Target's account registration page at issue in *Dawson*, involved a disclosure in "small text size" that was "difficult to read." *Dawson v. Target Corp.*, No. 3:24-CV-08167-AMO, 2025 WL 1651940, at *3 (N.D. Cal. June 11, 2025) (**Figure 5**).




**Figure 4.** Fluent Inc. Reward Sign-Up Page
*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 861 (9th Cir. 2022)




**Figure 5.** Target Account Creation Page
*Dawson v. Target Corp.*, No. 3:24-CV-08167-AMO, ECF No. 23-4, at 3,
*cited at* 2025 WL 1651940, at *3 (N.D. Cal. June 11, 2025)

The StubHub screen (**Figure 6**), unlike NVIDIA's banner, did not provide adequate notice because "it [wa]s not obvious to the user that the [terms were] hyperlinked" because they were "not underlined." *In re Stubhub Refund Litig.*, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023). The Amuse sign-up page (**Figure 7**) used small font and placed "the notice language" below the "Sign Up" action button, which was in "larger and darker text." *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023). And ClassPass notice's (**Figure 8**) "distance

from relevant action items" put it "outside of the user's natural flow," such that "[a] reasonably prudent user would [be] likely [to] click" that button before "read[ing] [any] further," and hence would be likely to never see the hyperlink at all. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025). None of these deficiencies apply to NVIDIA's banner.




**Figure 6.** StubHub Mobile Sign-Up Screen
*In re Stubhub Refund Litig.*, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023)




**Figure 7.** Amuse Sign Up Page
*Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1092 (C.D. Cal. 2023)




**Figure 8.** ClassPass Sign-Up Page
*Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1174 (9th Cir. 2025)

Plaintiff's other critiques of NVIDIA's banner are similarly meritless. For instance, Plaintiff argues that the link to the Website's Terms of Service was "in the same font color as the other words in the paragraph," "was neither bolded nor in all capital letters," and "appeared towards the end of a lengthy disclosure about the use of cookies." Opp. 7-8. But that ignores the contrasting green underlining, capitalization, and placement; making NVIDIA's notice more conspicuous than the *Ubisoft* and *LinkedIn* banners (**Figures 2 & 3**) that courts found to provide adequate notice.

Nor does Plaintiff get any further with his attempts to distinguish *LinkedIn* and *Ubisoft* on their facts. Plaintiff argues that *LinkedIn* is distinguishable because the plaintiff in that case "did not challenge the conspicuousness of the hyperlink" and the pop-up was specifically asking visitors to accept a "Cookies Policy" that went directly to the merits of the claims. Opp. 9. But these distinctions are irrelevant and ignore *LinkedIn*'s holding that where (as here) a persistent banner "clearly informs users in plain language that continued use of the website constitutes acceptance" of hyperlinked terms that are identified via "underlined" text and "capitalizes the first letter of each

word," the banner provides "sufficient notice." *LinkedIn*, 2025 WL 2899514, at *10. As for *Ubisoft*, Plaintiff contends that the plaintiffs in that case consented to cookie terms three separate times, creating a factual record far stronger than what is present here. Opp. at 9. But the *Ubisoft* court's holding did not turn on the number of times plaintiffs interacted with a consent process—it was based on the language of the banner that informed visitors that by "continuing to navigate the site" they were agreeing to the use of cookies and the fact that plaintiffs continued to use the website after the appearance of the banner. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1051-52, 1055 (N.D. Cal. 2025) (explaining that a party knowingly consents to a hyperlinked agreement by using the website where there is "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound" (internal citations and quotations omitted)). So, too, here. The Court should thus reject Plaintiff's contention that NVIDIA's cookie banner pages failed to adequately put him on notice of its Terms of Service.

In addition, Plaintiff's entire case is premised on his alleged interactions with and his review of the statements in the banner. *See, e.g.*, Compl. ¶¶ 136-139 (admitting that "Plaintiff viewed Defendant's representation on the popup cookie banner"). Having made those allegations, Plaintiff cannot now plausibly claim that he did not notice the disclosures. Plaintiff claims that consistent with his "typical practice" to manage and decline cookies, he deliberately engaged with the cookie banner, read it, and made an affirmative choice to manage and decline cookies. Compl. ¶¶ 136, 137. In fact, Plaintiff—a serial litigant on cookie banner disclosures—has admitted the same practice in at least two other complaints concerning nearly identical claims. *Barrales, et al. v. Reckitt Benckiser LLC*, No. 5:25-cv-10643, ECF No. 1, ¶¶ 126-27 (N.D. Cal. Dec. 12, 2025) ("When Plaintiff Penning visited the K-Y Website, the Website . . . presented him with [d]efendant's popup cookie consent banner. . . . ***Consistent with his typical practice*** in rejecting or otherwise declining the placement or use of cookies and tracking technologies, Plaintiff Penning selected and clicked the 'Disable All' cookies button.") (emphasis added); *Penning v. Newsmax Media, Inc.*, No. 4:26-cv-01059-JST, ECF No. 1-1 ¶ 93 (N.D. Cal. Feb. 3, 2026) ("Plaintiff selected the button to 'Use necessary cookies only' on the Cookies Consent Banner on [d]efendant's Website"). Plaintiff is also a named plaintiff in four other substantively similar class actions

involving website tracking technologies. *Timothee, et al. v. Meta Platforms, Inc., et al*, No. 3:25-cv-05106, ECF No. 1 (N.D. Cal. June 17, 2025); *Penning v. Insurancezebra, Inc.*, No. 3:25-cv-03531-LJC, ECF No. 1 (N.D. Cal. Apr. 22, 2025); *Nieves, et al. v. Microsoft Corp.*, No. 3:25-cv-10557, ECF No. 1-1 (N.D. Cal. Dec. 9, 2025); *Ostini, et al. v. IGN Entertainment, Inc.*, No. 5:26-cv-01375, ECF No. 1 (N.D. Cal. Feb. 16, 2026). A person who routinely and deliberately engages with website banners warning that his click or continued use of the website constitutes acceptance of the terms of service cannot plausibly claim ignorance of those terms when it suits him.

## III. PLAINTIFF DOES NOT DISPUTE THAT HIS CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT, THAT A STAY IS WARRANTED IF THE MOTION IS GRANTED, AND THAT LIMITED DISCOVERY IS WARRANTED IF THE MOTION IS DENIED.

Plaintiff does not seriously dispute that his claims against NVIDIA fall within the scope of the arbitration agreement. The closest he comes is an *en passant* assertion that "there is no putative arbitration agreement for Plaintiff or the Court to even consider," because it was inadvertently omitted from Lee Declaration. Opp. 5. First, the arbitration agreement is publicly available.[3] *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) (granting motion to compel arbitration based on Terms of Service that were not attached to the motion, but instead available publicly). Second, it is undisputed that Plaintiff's counsel—who has invoked NVIDIA's Terms of Service in other matters—had a copy of NVIDIA's Terms of Service and the arbitration agreement contained therein. Supp. Abugheida Decl. ¶ 2. Finally, as soon as NVIDIA learned of the inadvertent omission, NVIDIA promptly raised the issue with opposing counsel during a February 24 meet and confer call, offered to provide counsel time to review and adjust the briefing schedule, and provided a further copy of the Terms of Service to Plaintiff's counsel later that same day. Supp. Abugheida Decl. ¶¶ 3, 5 & Ex. D. Moreover, Plaintiff's reliance on *De Ridder v. Roblox Corp.*, 2025 U.S. Dist. LEXIS 256455, at *1 (N.D. Cal. Oct. 31, 2025) is misplaced, because that case concerned a defendant who attempted to invoke an arbitration clause from "a completely unrelated website" of an unrelated third party, *id.* at *2-3, and failed to provide a copy of the correct terms. Opp. 5. Plaintiff thus makes no serious argument that

[3] https://www.nvidia.com/en-us/about-nvidia/terms-of-service/.

his claims fall outside the arbitration agreement.

Plaintiff likewise does not object to NVIDIA's request that this litigation be stayed pending completion of arbitration, or to NVIDIA's request for limited discovery to arbitration agreement formation in the event the Court believes it has not yet satisfied its burden. By failing to address these arguments Plaintiff "by his silence . . . concede[s]" them. *Sandoval v. Cnty. of Riverside*, 2023 WL 3821806, at *5 (C.D. Cal. June 2, 2023); *Lansdown*, 2023 WL 2934932, at *4; *Ramirez*, 941 F. Supp. 2d at 1210 & n.7.

## IV. CONCLUSION

For the foregoing reasons, NVIDIA respectfully requests that the Court grant the Motion to Compel Arbitration and stay the proceedings pending the resolution of the arbitration.

Dated: March 13, 2026

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Ali Abugheida*

ALI ABUGHEIDA (SBN 285284)
aabugheida@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

BETTY KIM (SBN 341060)
betty.kim@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071-1596
Telephone: +213 612 2109
Facsimile: +213 612 2499

*Attorneys for Defendant NVIDIA Corporation*