ALI ABUGHEIDA (STATE BAR NO. 285284)
aabugheida@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

BETTY KIM (STATE BAR NO. 341060)
betty.kim@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071-1596
Telephone: +213 612 2109
Facsimile: +213 612 2499

Attorneys for Defendant
NVIDIA Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY PENNING, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NVIDIA CORPORATION,<br><br>　　　　　Defendant. | Case No. 5:25-CV-09160-SVK<br><br>**NVIDIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Courtroom: 6, 4th Floor<br>Judge:　　Hon. Susan van Keulen<br><br>Complaint Filed:　October 24, 2025 |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  PLAINTIFF LACKS ARTICLE III STANDING. ............................................. 2

III.  PLAINTIFF'S ENTIRE COMPLAINT FAILS TO SATISFY RULE 9(B). .................... 5

IV.  PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM. ........................ 7

    A.  The Invasion Of Privacy And Intrusion Upon Seclusion Claims Fail. .................. 7

    B.  Plaintiff's Wiretapping Claim Fails. ........................................................ 9

        1.  Plaintiff Fails To Identify Any Relevant Message "Contents." ................. 9

        2.  Plaintiff Fails To Plead Facts Showing That Any Communication Was Intercepted "In Transit." ................................................. 10

        3.  Plaintiff Fails To Plead Facts Showing NVIDIA Aided Wiretapping. ........................................................................... 12

    C.  Plaintiff's Pen Register Claim Fails. ...................................................... 13

        1.  Collecting IP Addresses Does Not Constitute An Illegal Pen Register Or Trap And Trace Device. ........................................ 13

        2.  Plaintiff Consented To The Recording Of His IP Address. ................. 13

    D.  Plaintiff's Fraud, Deceit, And Misrepresentation Claim Fails. ............................ 14

    E.  Plaintiff's Unjust Enrichment Claim Fails. .............................................. 15

V.  LEAVE TO AMEND SHOULD NOT BE GRANTED. .................................... 15

VI.  CONCLUSION ................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
  2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .................................................................. 15

*Abuelhawa v. Santa Clara Univ.*,
  529 F. Supp. 3d 1059 (N.D. Cal. 2021) ....................................................................... 15

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................................................................... 15

*In re Apple Processor Litig.*,
  2023 WL 5950622 (9th Cir. Sept. 13, 2023) .............................................................. 15

*Barrales, et al. v. Reckitt Benckiser LLC*,
  No. 5:25-cv-10643 (N.D. Cal. Dec. 12, 2025)……………………………………………...1

*Begay v. Kerr-McGee Corp.*,
  682 F.2d 1311 (9th Cir. 1982) ........................................................................................ 13

*Bruton v. Gerber Prods. Co.*,
  703 F. App'x 468 (9th Cir. 2017) ................................................................................... 15

*Capitol Recs. Inc. v. Thomas-Rasset*,
  2009 WL 1664468 (D. Minn. Jul. 11, 2009) .............................................................. 13

*Capitol Recs. Mirmalek v. L.A. Times Commc'ns LLC*,
  2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........................................................... 13

*Cody v. Ring LLC*,
  718 F. Supp. 3d 993 (N.D. Cal. 2024) ......................................................................... 10

*Cook v. GameStop, Inc.*,
  689 F. Supp. 3d 58 (W.D. Pa. 2023) ............................................................................... 7

*de Ayora v. Inspire Brands, Inc.*,
  2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ..................................................... *passim*

*Doe v. Eating Recovery Ctr. LLC*,
  806 F. Supp. 3d 1108 (N.D. Cal. 2025) ....................................................................... 11

*Esparza v. UAG Escondido A1 Inc.*,
  2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .............................................................. 11

*In re Facebook, Inc. Internet Tracking Litig.*
  956 F.3d 589 (9th Cir. 2020) ............................................................................................ 7

*Gabrielli v. Haleon US Inc.*,
   2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)........................................................ 1, 4

*Gabrielli v. Insider, Inc.*,
   2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ................................................................. 4

*Gabrielli v. Motorola Mobility LLC*,
   2025 WL 1939957 (N.D. Cal. July 14, 2025) ............................................................... 4

*In re Google Assistant Priv. Litig.*,
   546 F. Supp. 3d 945 (N.D. Cal. 2021) ...................................................................... 14

*In re Google Location Hist. Litig.*,
   514 F. Supp. 3d 1147 (N.D. Cal. 2021) ....................................................................... 8

*In re Google, Inc. Priv. Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................. *passim*

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..................................................................... 13

*Griffith v. TikTok, Inc.*,
   2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ............................................................... 7

*Hammerling v. Google LLC*,
   2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ............................................................. 7

*Hodes v. Van's Int'l Foods*,
   2009 WL 10674101 (C.D. Cal. June 23, 2009) ......................................................... 14

*Hubbard v. Google LLC*,
   2024 WL 3302066 (N.D. Cal. July 1, 2024) ............................................................... 15

*James v. Walt Disney Co.*,
   701 F. Supp. 3d 942 (N.D. Cal. 2023) ...................................................................... 12

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................................................ 9

*Khamooshi v. Politico LLC*,
   786 F. Supp. 3d 1174 (N.D. Cal. 2025) ................................................................. 1, 2

*L.B. v. LinkedIn Corp.*,
   2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .............................................................. 8

*Lefkowtiz v. Scytl USA*,
   2016 WL 537952 (N.D. Cal. Feb. 11, 2016) ............................................................... 7

*Licea v. Am. Eagle*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023) .................................................................... 10

*Malibu Media, LLC v. Pontello*,
　　2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......................................................... 13, 14

*Martin v. Sephora USA, Inc.*,
　　2023 WL 2717636 (E.D. Cal. 2023) ................................................................................ 11

*Mitchell v. Sonesta Int'l Hotels Corp.*,
　　2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ................................................................... 11

*Mitchener v. CuriosityStream, Inc.*,
　　2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .................................................................... 4

*Nieves, et al. v. Microsoft Corp.*,
　　No. 3:25-cv-10557 (N.D. Cal. Dec. 9, 2025)……………………………………………1

*Ostini, et al. v. IGN Entertainment, Inc.*,
　　No. 5:26-cv-01375 (N.D. Cal. Feb. 16, 2026)…………………………………………...1

*Penning v. Newsmax Media, Inc.*,
　　No. 4:26-cv-01059-JST (N.D. Cal. Feb. 3, 2026)………………………………………1

*Penning v. Insurancezebra, Inc.*,
　　No. 3:25-cv-03531-LJC (N.D. Cal. Apr. 22, 2025)……………………………...………1

*Popa v. Microsoft Corp.*,
　　153 F.4th 784, 791 (9th Cir. 2025) ......................................................................... 1, 2, 3, 4

*Price v. Converse, Inc.*,
　　805 F. Supp. 3d 1102 (C.D. Cal. 2025)........................................................................... 4

*Rodriguez v. Brushfire Records*,
　　2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .................................................................. 4

*Rodriguez v. Culligan Int'l Co.*,
　　2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ..................................................................... 4

*Rodriguez v. Plivo, Inc.*,
　　2024 WL 5184413 (Cal. Super. Ct. Oct. 3, 2024) .......................................................... 13

*Shah v. Capital One Fin. Corp.*
　　768 F.Supp.3d 1033 (N.D. Cal. 2025) ............................................................................ 15

*Shah v. Fandom, Inc.*,
　　754 F. Supp. 3d 924 (N.D. Cal. 2024) ..................................................................... 13, 15

*Silver v. Stripe Inc.*,
　　2021 WL 3191752 (N.D. Cal. Jul. 28, 2021) ................................................................. 15

*Smith v. Google, LLC*,
　　735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........................................................................... 6

*Smith v. YETI Coolers*,
754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) ........................................................ 12

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ....................................................... 11

*Timothee, et al. v. Meta Platforms, Inc., et al*,
No. 3:25-cv-05106 (N.D. Cal. June 17, 2025)……………….................……………1

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ................................................................ 11

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)............................................................................... 5

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)............................................................... 10

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ............................................. *passim*

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)...................................................... 7

*Wysocki v. Zoom Techs. Inc.*,
2024 WL 1139094 (W.D. Wash. Mar. 15, 2024) ................................................. 7

**Statutes**

Cal. Penal Code § 638.50................................................................................... 14

**Other Authorities**

Restatement (Second) of Torts § 652 (1977) .......................................................... 8

## I.  **INTRODUCTION**

Plaintiff's Opposition confirms this lawsuit is a formulaic attempt to manufacture litigation out of routine website analytics without factual allegations necessary to support standing and the causes of action asserted. This case is now one of six complaints Plaintiff filed in this District asserting substantially similar claims relating to website tracking technologies, four of which were filed after initiating the present lawsuit.[1]

The Ninth Circuit explained in *Popa v. Microsoft Corp.*, that in cases based on website tracking, a plaintiff cannot satisfy Article III's "concrete" injury requirement without establishing that the information tracked or shared is "highly offensive" to a reasonable person. 153 F.4th 784, 791 (9th Cir. 2025). To do so, Plaintiff must allege that some "embarrassing, invasive, or otherwise private information" was collected. *Id*. Here, all Plaintiff alleges was collected is routine website analytics—browsing data, device information, and IP addresses—and his search for "news," his review of a "Corporate Blog," and his review of A.I. related products. There is nothing "highly offensive" about collecting or disclosing any of that information. Plaintiff relies on *Walsh v. Dollar Tree Stores, Inc.* and *Gabrielli v. Haleon US Inc.* ("*Haleon*") to distinguish *Popa*, but neither changes the outcome. The briefing in *Walsh* was complete before the Ninth Circuit issued its decision in *Popa* and, therefore, in *Walsh*, this Court did not have occasion to apply or consider *Popa*. Meanwhile, *Haleon* involved a healthcare website, which tracked information that may be viewed as highly offensive. And Plaintiff's fallback position—that this case is somehow unique because NVIDIA's cookie banner represented that certain cookies would be blocked—does not save his claims either. Tracking basic information about Plaintiff's visit to NVIDIA's Website does not suddenly become "highly offensive" because, according to Plaintiff, NVIDIA's consent banner did not function as intended. *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (explaining that "a person generally has no legitimate expectation of privacy in information he voluntarily turns over to third parties" and that "remains true even if the information is revealed

---

[1] *Penning v. Insurancezebra, Inc.*, No. 3:25-cv-03531-LJC (N.D. Cal.); *Timothee, et al. v. Meta Platforms, Inc., et al.*, No. 3:25-cv-05106 (N.D. Cal.); *Nieves, et al. v. Microsoft Corp.*, No. 3:25-cv-10557 (N.D. Cal.); *Barrales, et al. v. Reckitt Benckiser LLC*, No. 5:25-cv-10643 (N.D. Cal.); *Penning v. Newsmax Media, Inc.*, No. 4:26-cv-01059-JST (N.D. Cal.); *Ostini, et al. v. IGN Entertainment, Inc.*, No. 5:26-cv-01375 (N.D. Cal.).

on the assumption that it will be used only for a limited purpose") (citations and quotations omitted).

Even if Plaintiff could establish standing, Plaintiff's entire complaint fails Rule 9(b)'s heightened pleading standard. Plaintiff does not dispute that a court in this District recently dismissed a virtually identical complaint, filed by Plaintiff's counsel, in its entirety under Rule 9(b). *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025). Nor does Plaintiff offer any persuasive grounds for distinguishing his Complaint from *de Ayora*'s.

Plaintiff also offers no persuasive defense of his claims on the merits. Plaintiff's Section 631 wiretapping claim fails because the Complaint supplies no facts showing that NVIDIA had knowledge of unlawful conduct or purposefully aided third parties in wiretapping. Plaintiff's Section 638.51 pen register claim fails because the statute was designed to address telephone surveillance, not the routine collection of IP addresses essential to internet functionality, and because Plaintiff consented to such collection by voluntarily navigating to NVIDIA's Website. Finally, under California law, unjust enrichment is not a standalone cause of action, and Plaintiff cannot plead it as an alternative when he fails to allege that he lacks an adequate remedy at law.

## II.   PLAINTIFF LACKS ARTICLE III STANDING.

NVIDIA's motion established that Plaintiff lacks standing because he failed to (1) allege a cognizable injury in fact that is (2) fairly traceable to NVIDIA's supposed failure to honor his cookie preferences. Mot. 5-8. Plaintiff responds by insisting that "[v]iolations of plaintiff's statutory rights under CIPA, even without more, constitute injury in fact." Opp. 4-5 (citing cases). This argument was squarely rejected by *Popa,* which explained that courts "require[] a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." 153 F.4th at 793. The cases Plaintiff cites predate *Popa.* They also provide only that statutory rights "may" provide a basis for standing; they do not establish that statutory rights always create standing. *Khamooshi,* 786 F. Supp. 3d at 1181 (citing *Popa* and holding that "[a] violation of CIPA, like a constitutional violation, does not automatically give rise to a concrete injury").

Next, Plaintiff argues that "unwanted online data collection and tracking can constitute concrete harm to individuals' interests" and that "there is no blanket rule that 'there can never be a

reasonable expectation of privacy over internet activity.'" Opp. 4-5. But NVIDIA has not argued otherwise. The question is not whether online data collection can *ever* implicate a privacy interest, but whether the particular data alleged to have been collected in this case runs afoul of a cognizable privacy right. And on that issue, Plaintiff concedes that courts have held—repeatedly—that none of the data at issue gives rise to Article III standing. Opp. 6, n.3 (citing *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *1, *4-*5 (N.D. Cal. Aug. 6, 2025); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *4-*5 (S.D. Cal. Nov. 3, 2025); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025)). Plaintiff attempts to distinguish those many cases on the ground that NVIDIA allegedly represented "that users could browse the Website without being tracked." Opp. 6. But that is a distinction without a difference: If (as is true here) the data at issue is not private, then its collection and disclosure implicates no cognizable privacy rights—regardless of whether the defendant represented that it would collect the data or not. *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) is instructive. There, Google represented in certain policies applicable to Android-powered devices that the information it collected would not be disclosed across other Google products (such as Gmail), but it allegedly did so anyway resulting in unauthorized disclosure to third-party app developers. 58 F. Supp. 3d at 974-75, 978. The court nonetheless held that "unauthorized disclosure in and of itself did not confer standing." *Id*. at 978.

Plaintiff's attempt to distinguish *Popa* illustrates the flaw in his reasoning. In *Popa*, the Ninth Circuit held that the plaintiff failed to establish Article III standing based on allegations that the website operator for www.petsuppliesplus.com and Microsoft used "session-replay technology" to track and recreate the user's *entire* visit to the website, including mouse movements, clicks, keystrokes, URLs, and other activity (much more than what is alleged here). Plaintiff attempts to distinguish *Popa* on the basis that the website tracking in *Popa* was different because it was "for the defendant's *own use*" rather than "third parties." Opp. 7 (emphasis in original). But whether a disclosure is "highly offensive" does not turn on how the information is used. Rather, the Ninth Circuit's decision turned on **the type of information** at-issue—website traffic on a pet supply website—the disclosure of which would not be "highly offensive to a reasonable person." 153 F.4th

at 791. Instead, it was akin "to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*. The same is true here. The information Plaintiff alleges was collected while he visited www.nvidia.com is not the type of information whose collection is "highly offensive" to a reasonable person—it is not "embarrassing, invasive, or otherwise private." *Popa*, 153 F.4th at 791. Moreover, that the information at-issue here was allegedly disclosed to "Third Parties" does not provide a basis to distinguish these cases. In *Popa*, as is alleged here, the website operator disclosed website traffic data to a third party as well. *Id*. at 786 (explaining that the website operated shared data with Mirosoft and vice-versa). And Plaintiff's reliance on Judge Orrick's decision in *Gabrielli v. Haleon US Inc*., 2025 WL 2494368, at *14 (N.D. Cal. Aug. 29, 2025) is misplaced. That case involved the tracking of information on a user's visit to a healthcare website, which is nothing like NVIDIA's Website.

Moreover, Plaintiff's status as a serial website privacy litigant "casts doubt on any suggestion that [he] was surprised" by the alleged privacy violations. *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *6-*7 (C.D. Cal. Dec. 15, 2025) (citations and quotations omitted) (holding that the plaintiff lacked standing because she failed to identify anything highly offensive about disclosing information about her visit to a music merchandise website and distinguishing *Haleon* on the basis that *Haleon* involved a healthcare website).

Next, Plaintiff asserts that this Court "recently considered and largely rejected [these arguments] in *Walsh v. Dollar Tree Stores, Inc*." Opp. 1 (citing 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)). On this issue, *Walsh* considered two cases: (1) *Gabrielli v. Motorola Mobility LLC*, 24-CV-09533-JST, 2025 WL 1939957, at *6, *10 (N.D. Cal. July 14, 2025), which held that loss of privacy, "as a general matter," could support Article III standing and (2) *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *3, *10, n.4 (S.D.N.Y. Feb. 18, 2025), which "found the plaintiff *lacked* Article III standing" in a "case of a similar posture" to this one. *Walsh* declined to follow *Insider, Inc.* because it did not "aris[e] from" a court "familiar with substantive California law." 2025 WL 1939957, at *10, n.4. *Walsh* did not consider the recent decisions—from courts in California—including *Popa*, *Rodriguez*, *Mitchener*, and *Price*, which found a lack of standing based on similar allegations. Mot. at 6-7 (discussing cases). Nor did the Court consider *In re Google, Inc. Priv. Pol'y*

*Litig.*'s holding that a cognizable privacy harm may not exist even when information is tracked "contrary to [the defendant]'s own" representations, 58 F. Supp. 3d at 987, or the specific facts alleged in this case. Mot. 5-8.

*Walsh* also does not control because it did not consider NVIDIA's separate argument regarding traceability. Mot. 8. Here, there is a mismatch between the act that Plaintiff challenges— the failure to honor cookie preferences—and the harm he claims he suffered—the collection of his so-called "Private Communications." Plaintiff responds that because NVIDIA "fail[ed] to honor Plaintiff's cookie preferences," it "caused" cookies to be "sent to Plaintiff and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with their user data." Opp. 8. But that is a *non-sequitur*. While Plaintiff alleges NVIDIA's failure to honor his cookie preferences caused *cookies* to be transmitted to Third Parties, that is not the same as the harm that Plaintiff claims to have suffered—which he describes not as the transmission of *cookies*, but as the "collect[ion] [of] his *Private Communications*." Opp. 5 (emphasis added). That distinction matters: As Plaintiff has admitted, cookies and Private Communications are not the same. *E.g.*, Compl. ¶ 207 (distinguishing between transmission of "cookies" and "Private Communications"). And, Plaintiff does not allege that NVIDIA's banner represented that NVIDIA would not collect or transmit the so-called Private Communications.

### III.   PLAINTIFF'S ENTIRE COMPLAINT FAILS TO SATISFY RULE 9(B).

Plaintiff's conclusory assertion that Rule 9(b) "does not extend to Plaintiff's statutory claims or privacy claims, which have no element of fraud or deception," is wrong on the law. Opp. 9. Rule 9(b) applies even "where fraud is not a necessary element of a claim," so long as the complaint alleges "a unified course of fraudulent conduct" as the factual basis for the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). And another court in this District recently held that a complaint materially identical to Plaintiff's (filed by the same counsel)—which likewise alleged that a website operator failed to abide by visitors' cookie preferences—fits that bill, and ruled that **all** claims, including invasion of privacy, intrusion upon seclusion, illegal wiretapping, illegal use of a pen register, and unjust enrichment, were subject to (and failed) Rule 9(b)'s heightened pleading requirement. *de Ayora*, 2025 WL 3707561, at *3.

Plaintiff does not acknowledge either *Vess* or *de Ayora*'s holdings, and instead relies solely on *Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024)—a case whose claims (unlike Plaintiff's) were not based on "any potentially fraudulent or misleading representations." *Id.* at 1198. Indeed, the defendant's argument for Rule 9(b) in *Smith* (unlike NVIDIA's here) was not based on any allegations in the complaint, but rather based on a "passing reference" to Rule 9(b) in the plaintiff's opposition brief. *Id. Smith* thus has no application to this case, which is analogous to *de Ayora*. Thus, as in *de Ayora*, Plaintiff's entire Complaint is subject to Rule 9(b).

Plaintiff concedes that Rule 9(b) requires him to plead "'the who, what, when, where, and how' of the misconduct charged." Opp. 9 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). As far as the "when," however, all Plaintiff can offer is that he saw the purported misrepresentation "during the class period." Opp. 10. But that provides no particularity at all, because neither Plaintiff's Complaint nor his Opposition even attempts to define "the class period." Compl. ¶ 144 (defining the class as "[a]ll persons who browsed the Website after clicking or selecting the 'Decline All' button in the Cookie Settings window and/or after toggling off 'Performance Cookies' and 'Advertising Cookies' in the Cookie Settings window," with no time limitation). Plaintiff's allegations here thus have even less particularity than in *de Ayora*, which provided a four-year window within which the plaintiffs' website visits supposedly occurred. 2025 WL 3707561, at *4. *de Ayora* also defeats Plaintiff's argument that his failure to allege when he visited NVIDIA's Website is irrelevant because his Complaint "provid[es] the specific banner he saw." Opp. 10, n.4. *de Ayora* rejected this exact argument because while the *de Ayora* complaint also included screenshots of certain cookie banners, "the cookie banners were changed" over time. That, in turn, rendered the "what," "where," and "how" of the alleged misconduct uncertain. 2025 WL 3707561, at *4. The same is true here—because Plaintiff fails to specify when he visited the website and did not allege that the banner's content was static—it is entirely unclear what Plaintiff saw, where the representations were made, and how he was allegedly deceived (if at all). *See also* ECF No. 28 at 6, n.1 (admitting that the Complaint that does not allege "[which] screenshot[s] w[ere] captured by Plaintiff" himself).

What is more, Plaintiff fails to respond to—and thus concedes—NVIDIA's separate

argument that the Complaint flunks Rule 9(b)'s standard, because it fails to specify which allegations are based on Plaintiff's personal knowledge, which are based on his counsel's investigations, and which are based on information and belief (which is not permitted under Rule 9(b)). Mot. 11; *Lefkowtiz v. Scytl USA*, 2016 WL 537952, at *3 (N.D. Cal. Feb. 11, 2016) (where "Plaintiff fails to respond to [an] argument [he] therefore concedes it through silence"). Indeed, Plaintiff's latest filings only exacerbate this ambiguity, emphasizing that "the Complaint does not allege [which] screenshot[s] w[ere] captured by Plaintiff" himself as opposed to his attorneys—while refusing to offer any clarity on the matter. ECF No. 28 at 6, n.1. For this reason, too, Plaintiff's entire Complaint must be dismissed.

## IV. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM.

### A. The Invasion Of Privacy And Intrusion Upon Seclusion Claims Fail.

Plaintiff does not seriously dispute that courts have repeatedly held that the types of information alleged to have been collected here do not give rise to a reasonable expectation of privacy. Opp. 11-12. The information allegedly gathered here was that Plaintiff searched for NVIDIA "news," read NVIDIA's "Corporate Blog," and browsed AI-related products for sale. Compl. ¶ 135. This information is not personal at all. Courts have set a much higher bar for "highly offensive" information that could be a basis for a privacy claim. *Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022) (dismissing common law privacy claims where Google allegedly collected information including a plaintiff's bank, the car she drove, another plaintiff's religious beliefs, and shopping searches); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d at 973, 988 (dismissing privacy claims concerning users' "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information")[2]; *Williams v. DDR Media, LLC*, 2023 WL 5352896,

---

[2] Plaintiff's footnote suggestion that *In re Google, Inc. Priv. Pol'y Litig.* is somehow "long-outdated" or "overruled" is meritless. Opp. 12, n.5. Courts continue to regularly invoke its holding that "'[c]ourts . . . have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms.'" *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *6 (C.D. Cal. Sept. 9, 2024) (quoting *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d at 985); *Wysocki v. Zoom Techs. Inc.*, 2024 WL 1139094, at *14 (W.D. Wash. Mar. 15, 2024) (dismissing intrusion upon seclusion and invasion of privacy claims based on *In re Google, Inc. Priv. Pol'y Litig.*); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023)

at *7 (N.D. Cal. Aug. 18, 2023) (collecting cases).

Instead, Plaintiff argues that a different rule applies here, because "[n]one of the cases" dismissing privacy claims "involve circumstances where a defendant offered to protect information" and "then violated that promise." Opp. 11-12. But, that is demonstrably untrue. In *In re Google, Inc. Priv. Pol'y Litig.*, the plaintiffs argued—and the court rejected—the same argument that Plaintiff makes here: that because "disclosure to third part[ies]" of the data at issue was "contrary to [the representations in] Google's own policies," it therefore constituted an invasion of privacy. 58 F. Supp. 3d at 987-88; *see also L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *19 (N.D. Cal. Oct. 10, 2025) (explaining that there is "no highly offensive conduct in allegations that Google surreptitiously tracked users' browsing data"). That makes sense: common-law privacy torts do not protect has all information "exhibited to the public." Restatement (Second) of Torts § 652B cmt. c (1977). Here, Plaintiff chose to expose his information to the public by voluntarily navigating to NVIDIA's Website, and thus that information cannot form the basis of an actionable common-law privacy tort—regardless of what NVIDIA allegedly told him.

Nor do any of Plaintiff's cited cases hold that information which otherwise would not give rise to a reasonable expectation of privacy suddenly does because a defendant represented that it will not collect it. Instead, they merely explain that "alleged deceit . . . in collecting" information can act as a "plus factor" in considering whether such collection is "highly offensive." *Walsh*, 2025 WL 2939229, at *14. *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021)—the decision on which *Walsh* is based—is instructive. In that case, the court initially *dismissed* the plaintiff's privacy claims—even though they were based on repeated location tracking—because they failed to show a legally protected interest, or reasonable expectation of privacy in "specific movements or locations" when using Google applications. It was only after the plaintiffs amended the complaint to allege that Google had a practice of "incessantly" tracking user

---

(dismissing intrusion upon seclusion). Further, *In re Facebook, Inc. Internet Tracking Litig.* did not "overrule" *In re Google, Inc. Priv. Pol'y Litig.* as Plaintiff claims, but rather distinguished it because the *Facebook* case concerned allegations that Plaintiffs' browsing data was tracked after "Plaintiffs had logged out and were not using Facebook when Facebook tracked them." 956 F.3d 589, 607 n. 8 (9th Cir. 2020).

locations such that they could extrapolate it and create a "mosaic" of the user's data did the court hold that there was a reasonable expectation of privacy. *Id*. at 1154-57. Here, Plaintiff merely alleges that his search for "news," his review of a "Corporate Blog," and his review of A.I. related products was collected. This type of benign activity is a far cry from "incessant" tracking of a user's physical movements. Because Plaintiff did not—and cannot—show that he had a reasonable expectation of privacy in any of the information at issue here, his privacy claims must be dismissed.

## B. Plaintiff's Wiretapping Claim Fails.

### 1. Plaintiff Fails To Identify Any Relevant Message "Contents."

Plaintiff concedes this Court in *Walsh* recently dismissed a virtually identical claim under Section 631, filed by Plaintiff's counsel, on the grounds it failed to allege that any substantive message "contents" were at issue. Opp. 14; *Walsh*, 2025 WL 2939229, at *16. Plaintiff attempts to distinguish *Walsh* on the ground that the plaintiffs there "did not allege that the named plaintiff actually generated" any "user input data," or "that any such data was read or communicated to third parties." Opp. 14. But that is equally true of Plaintiff here. The paragraph of the Complaint that Plaintiff cites as establishing the latter point, Paragraph 141, replicates the parallel paragraph in the *Walsh* complaint nearly verbatim. *Compare* Penning Compl. ¶ 141 (Defendant "continued to cause the placement and/or transmission of cookies along with user data, including those involved in providing advertising and performance analytics from the Third Parties on his device. In doing so, Defendant permitted the Third Parties to track and collect Plaintiff's Private Communications as Plaintiff browsed the Website.") *with* Walsh Compl. ¶ 81 (Defendant "continued to cause the placement and/or transmission of such cookies along with user data from the Third Parties on him [sic] device. In doing so, Defendant permitted the Third Parties to track and collect Plaintiff Walsh' [sic] Private Communications as he browsed the Dollar Tree Website."). Moreover, that Plaintiff alleges he typed the word "news" into the search bar (Compl. ¶ 135) does not save his argument either. As explained in *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023), there is no "blanket rule that all entries in a web form are content," and in this context, the "contents" of a communication "encompasses personally identifiable information such as a party's name, date of birth, and medical condition." *Id*. The word "news" does not meet that threshold.

## 2. Plaintiff Fails To Plead Facts Showing That Any Communication Was Intercepted "In Transit."

As to Section 631's "in transit" requirement, Plaintiff's arguments and allegations are identical to ones that other courts have already found insufficient. *de Ayora*, another court in this District, dismissed a similar Section 631 claim brought by Plaintiff's counsel on exactly this ground. 2025 WL 3707561, at *7. In so doing, the court explained that "none of the[] paragraphs" of the complaint that the *de Ayora* plaintiffs relied on (nor "elsewhere in the complaint") contained anything beyond the "mere assertion that Defendants or third parties acquire the communications contemporaneously," which is "insufficient to survive" a motion to dismiss under *Twombly. Id.* As shown in the chart below, the allegations on which Plaintiff relies here, Opp. 14 (quoting Compl. ¶¶ 3, 30, 34, 141, 186), are materially identical to those rejected in *de Ayora*, and accordingly must meet the same fate:

| Plaintiff's Allegations | *de Ayora* Allegations |
|---|---|
| Compl. ¶ 3: the cookies "permitted the Third Parties to track and collect data in real time" | Compl. ¶ 3: the cookies "permitted the Third Parties to track and collect data in real time" |
| Compl. ¶ 30: the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications" | Compl. ¶ 49: the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications" |
| Compl. ¶ 34: "interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains" | Compl. ¶ 51: "interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains" |
| Compl. ¶ 141: "Defendant permitted the Third Parties to track and collect Plaintiff's Private Communications as Plaintiff browsed the Website" | Compl. ¶ 138: "Defendants caused the Third Parties to track and collect Plaintiff Nino's Private Communications as Plaintiff browsed the Website" |
| Compl. ¶ 186 third parties "read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while the electronic communications were in transit" | Compl. ¶ 195: third parties "read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while the electronic communications were in transit" |

*de Ayora* is not a one-off. Numerous other courts have reached similar conclusions. *E.g.*, *Licea v. Am. Eagle*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (dismissing § 631 claim because "using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting [the plaintiffs'] data in transit"); *In re Vizio,*

*Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing § 631(a) claim because allegations that defendant "intercepted the[] communications . . . 'during transmission'" were too conclusory); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (dismissing "conclusory allegations restating the pleading requirement of real-time interception" because they "fail to provide specific factual allegations" that any interception occurred in transit); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. 2023) (similar). Further, Judge Chhabria recently held that ***the very technology at issue in this case*** does not meet Section 631's requirement that a third-party interloper actually "read, attempt to read, or attempt to learn the contents of [the] communications . . . while those communications [are] in transit," because the relevant data is only sent to the third party "about 0.2 seconds ***after*** the visitor's action is transmitted to the website." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1108, 1117, 1119 (N.D. Cal. 2025) (emphasis added).[3]

Nor can Plaintiff avoid those cases by cherry-picking various other decisions holding that different theories and allegations were sufficient to survive a motion to dismiss on this score. Opp. 14-15. Plaintiff notably does not even attempt to show that his allegations are anything like those in the cases he cites. And for good reason: Whereas Plaintiff's allegations are identical to those rejected in *de Ayora*, they bear no resemblance to the ones sustained in the cases he relies on. None of those cases involved the same broad cookie-banner-related theories that Plaintiff advances here. *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) (tracking of chats); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) (same). Plaintiff's remaining authorities fare no better. *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) (holding that conclusory allegations do not satisfy the "in transit" requirement); *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) (failing to specify what technology was at-issue and simply accepting the conclusory allegation that communications were intercepted "in transit").

---

[3] Plaintiff's assertion that Section 631 applies so long as the "eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California" is irrelevant. Opp. 15. As Judge Chhabria explained, the communications at issue are not read while they are in transit, or while they are being sent or received, but rather are read only "***after***" transmission and reception are complete. *Doe*, 806 F. Supp. 3d at 1117 (emphasis added).

### 3. Plaintiff Fails To Plead Facts Showing NVIDIA Aided Wiretapping.

Plaintiff does not adequately plead that NVIDIA aided and abetted any wiretapping activity. He argues that NVIDIA "voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" and that this was done "pursuant to agreements between Defendant and [the] Third Parties." Opp. 16. But alleging that NVIDIA installed analytics software does not make a plausible showing that NVIDIA knowingly aided wiretapping. Plaintiff does not claim that wiretapping occurred because of the mere installation of that software, but rather because the option to opt-out of non-essential third-party cookies did not function properly. Critically, the Complaint supplies no facts suggesting that this malfunction was intentional or even known to NVIDIA, as opposed to inadvertent error. Mot. 22. In other words, other than conclusory assertions of "willful[ness]," Comp. ¶ 185, Plaintiff makes no factual allegation that NVIDIA knowingly or willfully set up a faulty cookie banner to aid third parties in wiretapping Plaintiff.

Plaintiff's reliance on *James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) is misplaced. *James* dismissed wiretapping claims to the extent that they were premised on the assertion that the interception benefited someone other than the defendant. *Id.* at 954. In doing so, the court explained that it could not reasonably infer that the defendant would intercept to benefit a company other than itself. *Id.* The intent element was therefore lacking. *Id.* Here, there are no allegations that NVIDIA intended to collect Website visitor data for its own benefit. Just the opposite: Plaintiff alleges that NVIDIA's cookie banner malfunction benefited "[t]he Third Parties [who] analyze and aggregate this user data across websites and time for their ***own*** purposes and financial gain." Compl. ¶ 4 (emphasis added); *see also* Compl. ¶¶ 36, 37, 53, 75, 111, 117, 120, 183, 188 (explaining how third parties benefit). Based on Plaintiff's allegations, it cannot be reasonably inferred that NVIDIA intended to intercept Plaintiff's information to benefit third parties.

Plaintiff's attempt to distinguish *Smith v. YETI Coolers* misses the mark. Opp. 17. In *YETI Coolers*, the court found that the defendant did not intend to enable the third party to collect user information; it only intended to enable the third party to process payments made on its website. 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). Here, Plaintiff alleges nothing more than that NVIDIA

integrated third-party analytics software on its website—conduct that is ubiquitous across the internet and does not, standing alone, demonstrate a "purpose" of enabling wiretapping.

### C. <u>Plaintiff's Pen Register Claim Fails.</u>

#### 1. Collecting IP Addresses Does Not Constitute An Illegal Pen Register Or Trap And Trace Device.

Plaintiff does not dispute that his pen-register claim cannot survive unless he can show that, as a matter of law, § 638.51 "appl[ies] to the collection of IP addresses." Opp. 17. Nor does he dispute that a California state court, interpreting this very California state statute, recently held that it does not, *Rodriguez v. Plivo, Inc.*, 2024 WL 5184413 (Cal. Super. Ct. Oct. 3, 2024), Request for Judicial Notice, Ex. A—just as federal courts, interpreting the analogous federal statute, long have as well, *e.g.*, *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. Jul. 11, 2009) (pen register laws "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them"). Indeed, Plaintiff does not mention *Plivo* or *Capitol Recs.*—much less attempt to distinguish them. Nor does he cite any California state court decisions interpreting § 638.51 differently. Under *Erie* principles—which "require[] that the federal court grant or withhold relief as the state courts would"—that should be the end of the matter. *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1316 (9th Cir. 1982). None of Plaintiff's cases address how state courts have approached this issue, let alone specifically address *Plivo* or *Capitol Recs. Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *Walsh*, 2025 WL 2939229, at *16.

#### 2. Plaintiff Consented To The Recording Of His IP Address.

Plaintiff's § 638.51 claim separately fails because by "consensually engag[ing] in [an internet] transaction" and "communicat[ing] [his] IP address as part of" that transaction, he consented to the collection of his IP address. *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013). Plaintiff attempts to distinguish *Malibu Media* on two grounds, neither of which withstands scrutiny. Plaintiff argues that *Malibu Media* "applies the federal Pen Register Act—not CIPA." Opp. 19. But that is a distinction without a difference, as NVIDIA has already explained, the provision of CIPA at issue is not just analogous to the federal Pen Register

Act, it was specifically modeled after it. California Bill Analysis, A.B. 929 (Apr. 7, 2015).[4] Indeed, Plaintiff does not even attempt to identify any relevant differences in the scope of the statutes. Further, Plaintiff argues that *Malibu Media* is different because it involved a defendant who "merely recorded IP addresses that were transmitted" to it, instead of one who caused that same information "to be transmitted to Third Parties." Opp. 19. But as NVIDIA has already explained, that makes no difference under § 638.51 because the statute applies only to the "record[ing]" of data; it does not regulate any subsequent sharing of data. Cal. Penal Code § 638.50(b).

### D. Plaintiff's Fraud, Deceit, And Misrepresentation Claim Fails.

Plaintiff has not pled his fraud claim with the necessary particularity required by Rule 9(b), *supra* § III. His fraud claim also fails because Plaintiff does not allege NVIDIA knew the "decline" button did not operate as intended, or that it intended to create a non-functioning "decline button." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021) (dismissing a fraud claim because plaintiff did not allege that Google "at the time of the alleged misrepresentations, had the intent to mislead or omit material information" about its software).

Plaintiff's conclusory allegation that NVIDIA "knew or, should have known, how the Websites functioned" is not sufficient. Opp. 20, citing Compl. ¶ 208. Under California law, Plaintiff must allege facts showing NVIDIA "actually knew" the statement was false or "acted with reckless disregard for its truth or falsity." Mot. 19 (citing *Wishnick v. Frye*, 111 Cal. App. 2d 926, 930 (1952)). Similarly, Plaintiff offers no facts establishing that NVIDIA intended to deceive users. Courts have repeatedly held that "[m]erely conclusory" allegations of "scienter and intent to defraud" are insufficient. *Hodes v. Van's Int'l Foods*, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009). Mot. 19. Plaintiff does not address NVIDIA's cited authority or provide any of his own to rebut it. Opp. 20. Plaintiff's fraud claim also fails because he does not adequately allege damages. Mot. 27-28. Plaintiff argues that he may seek "compensatory damages for any type of harm" under California Civil Code Sections 1709 and 3333. Opp. 20. But Plaintiff's Opposition does not identify any actual damages he suffered—only conclusory allegations of "loss of money and property."

---

[4]  https://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html.

Mot. 19-20. Plaintiff's theory appears to be that he lost "control" over his personal information and suffered a "diminution" in its value. But this Court has rejected such theories as insufficient to state a fraud claim. *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024).

### E. Plaintiff's Unjust Enrichment Claim Fails.

Plaintiff argues that unjust enrichment is an independent cause of action. Opp. 21-22. However, an unjust enrichment claim is not an independent tort claim, but rather an attempt "to seek 'restitution on a quasi-contract theory.'" *Silver v. Stripe Inc*., 2021 WL 3191752, at *8 (N.D. Cal. Jul. 28, 2021). "[P]laintiffs are not entitled to restitution under a quasi-contract theory" by replication allegations from their other claims. *Id*.; *In re Apple & AT&T iPad Unlimited Data Plan Litig*., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."). Plaintiff's reliance on *Bruton v. Gerber Prods. Co*., 703 F. App'x 468, 470 (9th Cir. 2017) is also misplaced. As explained in *Abuelhawa v. Santa Clara Univ*., 529 F. Supp. 3d 1059, 1071 (N.D. Cal. 2021), *Bruton* is based on an incorrect interpretation of California law, which has been "flatly" rejected by California Courts of Appeal.[5] Plaintiff also makes no effort to address NVIDIA's cited cases that require Plaintiff to plead that he lacks an adequate remedy at law to state a claim for equitable relief. Mot. 20-21. Plaintiff's attempt to raise the unjust enrichment claim in the alternative fares no better. *In re Apple Processor Litig*., 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) ("[p]laintiffs were obligated to allege that they had no adequate legal remedy in order to state a claim for equitable relief").

## V. LEAVE TO AMEND SHOULD NOT BE GRANTED.

Plaintiff requests leave to amend "to correct any defects the Court identifies." Opp. 22. But leave to amend should be denied where, as here, amendment would be futile. The defects in Plaintiff's Complaint are fundamental deficiencies that demonstrate Plaintiff has no viable claims.

## VI. CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

---

[5] Plaintiff's reliance on *Shah v. Capital One Fin. Corp*., 768 F. Supp. 3d 1033 (N.D. Cal. 2025) is misplaced because *Shah* relies on *Bruton* (which misapplied California law). Plaintiff's reliance on *A.J. v. LMND Med. Grp., Inc*., 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) fares no better. That case did not consider the arguments made here. *Walsh* also did not consider the arguments that NVIDIA advances here. 2025 WL 2939229, at *20.

1  Dated: March 13, 2026

Respectfully submitted,

2  **ORRICK, HERRINGTON & SUTCLIFFE LLP**

3

4

By: */s/ Ali Abugheida*

5

6  ALI ABUGHEIDA (SBN 285284)
aabugheida@orrick.com
The Orrick Building

7  405 Howard Street
San Francisco, CA 94105-2669

8  Telephone: +1 415 773 5700
Facsimile:  +1 415 773 5759

9

10  BETTY KIM (SBN 341060)
betty.kim@orrick.com
355 S. Grand Ave., Suite 2700

11  Los Angeles, CA 90071-1596
Telephone: +213 612 2109

12  Facsimile: +213 612 2499

13  *Attorneys for Defendant
NVIDIA Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28